CASE, Respondent, vs. FISH and others, Appellants.

*December 3, 1884 — June 24, 1885.*

*(1) Agency coupled with an interest: Termination: Receiver: Settle-*
*ment of business: Payment of debts incurred. (2) Method of sale*
*by receiver, whether as a whole or in parcels.*

1. There being no proof of bad faith on the part of the defendants, or
   of any negligence in the conduct of the business, and the rights of
   the respective parties therein having been open to reasonable doubt,
   the contract relations between the parties — by virtue of which, as
   determined on the former appeal (58 Wis. 56), the plaintiff was
   the owner of the business and the defendants carried it on as his
   agents with a right to become the owners thereof upon payment
   of the moneys advanced by the plaintiff and certain amounts of
   interest and allowances for the use of his credit, etc. — are *held* to
   have subsisted after the commencement of this action to determine
   the rights of the parties and until such rights were so determined
   and a receiver appointed; and until that time the defendants, in
   conducting the business, are *held* to have acted as the agents of
   the plaintiff as fully as before the commencement of the action,
   except that, after being forbidden by the plaintiff, they had no
   right to use his credit or make him personally liable for debts in-
   curred in carrying on the business. In the closing up and settle-
   ment of the business, therefore, all debts fairly incurred by the
   defendants in carrying it on, up to the time of the appointment of
   the receiver, should be paid out of the assets of the business before
   the payment to the plaintiff of the moneys advanced by him.
2. A direction of the court below to the receiver of a large manufact-
   uring business to sell the business and all the personal property
   belonging thereto as a whole, including raw material, finished
   products, and all the debts due to the business, is *held* to be erro-
   neous as not calculated to produce the most money or be most
   advantageous to all parties interested.

APPEAL from the Circuit Court for *Racine* County.
The case is stated in the opinion.

For the appellants there was a brief by *Fish & Dodge*,
attorneys, and *J. V. Quarles* and *John N. Jewett*, of coun-
sel, and oral argument by *Mr. Fish*, *Mr. Quarles*, and *Mr.*
*Jewett*.

For the respondent there was a brief by *Wm. F. Vilas* and *Jas. G. Jenkins*, of counsel, and *C. H. Lee*, attorney, and oral argument by *Mr. Jenkins* and *Mr. Vilas*.

The following opinion was filed January 13, 1885:

TAYLOR, J.   This case has been before this court upon a former appeal by the present respondent, from a judgment entered therein by the circuit court, and upon such appeal the judgment appealed from was reversed and the cause remanded for further proceedings.   The opinion of this court upon that appeal will be found in 58 Wis. 56 *et seq.*   The facts of the case are fully set out in that opinion, which renders it unnecessary to repeat them again here except in a very general way.   It is sufficient to say that in 1868 Fish Bros. transferred what personal property they then had in the wagon-making business at Racine to the present respondent, *Jerome I. Case*, for a valuable consideration, and upon the agreement that the business of wagon-making at Racine should be thereafter carried on by the said respondent, the Fish Bros. acting in said business as his agents, they to be permitted to draw out of said business $1,200 each per year for the support of their respective families, and to devote all their time and attention to said business; *Mr. Case* to advance what money was required for the transaction of the business, pay the debts contracted in carrying on the same, and to receive an agreed-upon rate of interest for the money so advanced, and certain other sums for his care, trouble, and for use of his credit in the business; and whenever the Fish Bros. should return to *Mr. Case* all the money he should so advance, together with the interest and other sums agreed to be paid to him, and pay all the debts incurred by *Mr. Case* in carrying on the business, then he was to convey to the said Fish Bros. all the property and assets belonging to said business.   The time the business should be carried on in this way was left entirely indefinite.

Under this agreement the business was carried on by Fish Bros., as agents for *Mr. Case*, until the commencement of this action, in 1880. The business, with the consent, or at least the acquiescence, of *Mr. Case*, had grown from small beginnings in 1868, so that in 1880, when this action was commenced, they were manufacturing and selling nearly or quite 15,000 wagons and other vehicles annually. The value of the materials, machinery, and real estate belonging to the business was estimated to be over $500,000.

Shortly before this action was commenced, a disagreement arose between *Mr. Case* and the Fish Bros. as to the relations they sustained to each other in respect to the business so carried on by them. On the part of the Fish Bros. it was claimed that the business was in fact their business, and that *Mr. Case* was their creditor for the amount of money advanced by him, and they were his debtors for the same; and that the transfer which had been made to *Mr. Case* in 1868 of their personal property, though in form a sale, was in fact intended as a security in the nature of a mortgage. On the part of *Mr. Case* it was claimed that he was the real owner of the business, and that the Fish Bros. carried the same on as his agents, he taking all the risks of the business, and assuming and being responsible for all the debts contracted by them in carrying it on. There was also a disagreement between the parties as to the amount of interest which should be allowed to *Mr. Case* for the money advanced by him, as well as to the amount of other charges claimed by *Mr. Case* for the use of his name and credit in the business, and for clerk hire in looking after the same. Being unable to agree between themselves as to their respective rights, *Mr. Case* commenced this action to have the rights of the parties determined, and to close up the business.

Upon the trial in the circuit court it was determined that *Mr. Case* was not in fact the owner of the business, but

that he held the relation of creditor of Fish Bros. for the amount of money advanced in the business; that Fish Bros. were the owners of the business, and were the debtors of *Mr. Case* for the money so advanced; and it was also adjudged that *Mr. Case* had a lien in the nature of a mortgage upon the business and property of Fish. Bros. for the amount found due him. From this judgment of the circuit court both parties appealed to this court; the Fish Bros. claiming that the amount found due to *Mr. Case* by the circuit court was too large, and *Mr. Case* claiming that the amount was too small, and claiming also that the court erred in finding that he was not the owner of the property and business as claimed by him.

After a most thorough and exhaustive argument of those appeals by the learned counsel for the respective parties, this court reversed the judgment of the circuit court, holding that the evidence sustained the claim of *Mr. Case* that he was the owner of the business and property, subject, however, to the right of the Fish Bros. to carry on the business as agents for him, and to have a transfer of the business and property to them upon the payment to *Mr. Case* of the money advanced by him, with certain amounts of interest and other sums which had been claimed by him and allowed by the defendants for the use of his name in the business, and for other expenses and clerk hire. It will be seen by an examination of the whole evidence on the former appeal, as well as from the opinion written by the chief justice, that the rights of the parties were not free from doubt, and that one of the most convincing and probably the controlling argument in favor of adopting the plaintiff's statement of the agreement between the parties was the fact, which seemed to be conceded upon all sides, that *Mr. Case* was personally liable for all the debts contracted by Fish Bros. in carrying on the business. This fact was so inconsistent with the claim of the Fish Bros.

that he was a mere creditor, loaning them money for the conduct of their business, and for which he was only enti- tled to receive the rate of interest established by law, as to render it highly improbable that their claim as to the nat- ure of the contract between them was the true one. In determining the question as to the rights of the respective parties, the chief justice uses the following language:

"Accepting as substantially correct — as we are disposed to do — the agreement as claimed by the plaintiff, there was much discussion as to its legal effect, and the rights of the parties under it. On the part of the plaintiff, it was said the engagement entered into was in the nature of an agency coupled with an interest, or a *quasi*-partnership, where the title and ownership were in the plaintiff as prin- cipal, until the defendants should be entitled to have the property and business as their own, by the extinguishment of plaintiff's claims and liabilities. It is not denied that the defendants had rights in the business which the plaintiff could not ignore, and which a court of equity would pro- tect. The plaintiff could not, by reason of his superior in- terest, take advantage of the defendants, or dismiss them at will from the management of the business. But it is not easy to define the real relation of the parties under the agreement. It would not essentially aid us in the solution of the questions involved, if we should attempt to do so, and try to properly classify the engagement. The parties' rights rest upon the contract which they have made. It is peculiar in many of its features. In some aspects it is much like a partnership, though there was to be no com- munion of profit. But it is a grave question, if the busi- ness had turned out unprofitable, whether the plaintiff would not have lost all advances which he had made on its faith and credit. Our present impression is that he would; that he trusted the business alone for the return of such advances. If there was an obligation on the part of the

defendants to pay these advances, such liability was ' anomalous ' and ' peculiar.' But it clearly appears that the plaintiff held himself out to the world as the responsible party in the business. All debts were contracted with him as principal. He retained the entire control of the finances. The defendants, not ostensibly but really, acted as his agents in its management. These are features which distinguish the engagement from an ordinary partnership, where each partner has power to bind the firm by simple contracts relating to the business, to receive debts due the firm, and to share in the profits and losses. But whether the engagement in question created an agency coupled with an interest, or a *quasi*-partnership, or a *quasi*-trust, certain it is the parties could fix their obligations and duties under it. It was a lawful contract to carry on a lawful business in a lawful way, and the parties should abide by the terms of the agreement which they have made.

" The plaintiff did not agree to continue the business for any length of time; but he did agree to furnish whatever money should be necessary to carry it on, no amount being specified. The expectation seems to have been that, by good management, the business would pay the plaintiff's claims within two or three years, when the Fish Bros. would be entitled to have and own it, with whatever had been saved or made out of it. But that expectation, it seems, was not realized. The business was conducted in the manner as indicated, the plaintiff furnishing all necessary means for the purpose, or using his credit at the banks to procure discounts as needed. The volume of business was largely increased. In January, 1869, the plaintiff claimed, and charged in account, as compensation for his personal services and clerk hire for 1868, $2,000; for 1869, $1,500; for 1870, $1,250; and for 1871, $1,250. These charges were over and above ten per cent. interest on all advances which he had made to the business, on all moneys which he had

paid to buy up the debts of Fish Bros., and on their notes which he held. That rate of interest he exacted, and it was allowed him on these several amounts. The plaintiff says that all these charges for compensation for personal services and clerk hire were made by arrangements at different times with Fish Bros., or one of them, who consented and agreed to them.

" The defendants allege in their answer, and offered proof to sustain the allegation, that the plaintiff, knowing that they were unable to discharge their indebtedness to him, about January 27, 1869, demanded and required that they should agree to pay, and pay, as and for interest upon all their indebtedness then contracted or to be contracted, interest at the rate of twelve and one half per cent., and that the above charges were a mere shift or device for exacting usurious interest, which, in their straitened circumstances, they were compelled to accede to, and did agree to pay. This presents the first defense of usury which we have to consider. Now, we have just stated that, in our view, after the judicial sales and agreement, the parties did not stand to each other in the simple relation of debtor and creditor or mortgagor and mortgagee. The Fish Bros., after that time, were not the owners of the business and property, as they claim. The plaintiff became the owner, and carried it on in his name, as his own, under their management as agents. Therefore, whatever advances he made were not by way of loans to the defendants which they undertook to repay, except as they gave their notes, as they did for advances February 1, 1876, and January 29, 1877. But as to other advances to the business, they made no express promise to repay them. Of course, they would not be entitled to have the business and property as their own unless they paid these advances, with other indebtedness, together with interest at the agreed rate; but that is another matter, not affecting the question of usury. If the defend-

ants had really been the owners of the business, and the plaintiff had made advances to carry it on, doubtless they would be liable for the amount on an implied *assumpsit*, if there were no express promise. Such was not the position of the parties.

" It seems to us the usury laws have really no application to the transactions under review. The plaintiff made advances under the agreement to carry on the business, and became liable for every debt that was contracted. This is an incontestable fact. The defendants do not deny his personal responsibility to every creditor of the concern, and the evidence shows that he did give the business more or less personal attention; that his own clerk attended to it; that in some years he actually incurred liabilities about the business amounting to a half million of dollars. It is obvious that this was not a simple loan by the lender to the borrower. It is not a case where more than lawful interest is exacted for the simple use of money. That is the transaction which the statute condemns. Nor is there any ground for saying that the transactions took the form they did as a shift or device to cover usury. The parties had the undoubted right to agree as to what compensation the plaintiff should receive out of the business for his personal services and the services of his clerk. Such an agreement having been fairly made, what principle of law or morals will be violated if effect is given to it? Neither in form nor in substance did the transaction amount to a loan and borrowing, or a forbearance of money.

" The referee and circuit court, while holding that the only interest which the plaintiff had in the personal property and business was as security for the indebtedness due, yet were of the opinion that the charges for personal services, etc., above alluded to, were legal, and were not a cover for usury exacted on loans. In that view we fully concur. But in respect to another claim of the plaintiff the defense

of usury was sustained. Owing to changes in the manner of conducting the business, the concern became embarrassed, and in 1873 the plaintiff was applied to for additional advances to carry it on. The evidence shows that with great reluctance, after having taken an inventory of the assets, and having investigated the condition of the concern, he did advance $75,000, or thereabouts, to carry it on. It is alleged on the part of the defendants, and proof was given tending to support the allegation, that the plaintiff, taking advantage of defendants' necessities, demanded and required, as a condition of all further advances, that they should pay him twelve and one half per cent. interest on all sums which he should advance, and that they were compelled to agree to do so. According to the theory of the defendants as to the relation of the parties, such a contract would doubtless be illegal; that is, if they were really the owners of the concern, and that rate of interest was exacted merely as a compensation for the use of money loaned, there being no other element of risk except the responsibility of the borrowers entering into the transaction. But such a theory of the case we reject as not supported by the facts and conduct of the parties. The plaintiff made these advances, as he had others, on the credit of the business, not as loans to the defendants. The business at the time was really his, subject to the right of the defendants to become the owners.

"The plaintiff says that in no event was he to receive more than ten per cent. interest on his money, and that the excess was charged as compensation for personal and clerk's services, and the use of his credit. Such charges were made in account for the years 1873, 1874, and 1875. The plaintiff says that the charges as to each year were pursuant to an arrangement made with one of the defendants. Much stress was laid upon the fact that in the entry in the plaintiff's books for 1873 the charge was for interest at twelve

and one half per cent., thus, it is said, rebutting the inference that the parties understood the excess was for personal and clerk's services. The plaintiff also stated that the use of money was worth more than ten per cent., and that more than that rate could be obtained for it in Chicago and Minnesota. But the entry and these statements are satisfactorily explained in the evidence. They would be entitled to much weight as tending to prove usury, if the relation of the parties was that of borrower and lender. As it is, they have but little or no significance. If the business had resulted disastrously, would not the plaintiff have lost his advances? Could not the defendants, if repayment had been demanded, have said: ' We did not promise to make good these advances; they were made under the agreement by which the business and property became yours until such time as we should be entitled to have them by paying you all indebtedness and charges. We were managing the business for you, as your agents. We have assumed no liability for the debts of the concern, either to you or to third parties. We surely have entered into no express obligation to pay the principal or interest, except in two instances.' Now this they might well have said under the arrangement for conducting the business. Such being the case, what ground is there for predicating usury on the transaction of 1873 any more than upon that of 1869? We can see no material difference in the cases."

After adopting the agreement as claimed by *Mr. Case*, the opinion goes on to show that no question of usury could arise, and that all the charges for services and expenses, and for the use of his name in the transaction of the business, which had been allowed by Fish Bros. in their settlements with *Mr. Case*, were not, under the circumstances, so unreasonable as to justify this court in setting aside their settlements and directing a new accounting, and that the balance found due *Mr. Case* upon a certain settlement made

January 1, 1876, should be held the true balance for the amounts advanced to him in carrying on the business to that date, and which, together with any other advances made subsequent to that date, the Fish Bros. must refund with interest before they could call upon him to transfer the business and property to them. After stating the basis for fixing the amount which should be allowed and paid to *Case* by Fish Bros., in order to entitle them to have a transfer of the property and business, the chief justice closes his opinion with the following remark: "We do not feel called upon to consider at this time what relief the plaintiff will be entitled to in case the amount found due him on another accounting is not paid. The circuit court has ample power to grant such further relief as may be necessary for the protection and security of his rights."

The record having been remitted to the circuit court, the matter was referred to a referee to ascertain and report the amount advanced by *Mr. Case* under the agreement, and which still remained unpaid by Fish Bros. The referee made his report, finding the amount at the date of the report, including interest to that date, to be the sum of $212,546.87.

The court also made an order of reference to take evidence and report the amount of money which been taken from the proceeds of the business by the Fish Bros. over and above the sum of $1,200 per year, which the contract allowed them to receive therefrom for their support or annual compensation as stipulated in the contract, and had been by said Fish Bros. invested in the purchase and improvement of real estate connected with the business, and for making permanent improvements upon the real estate upon which the business was carried on, the title to which had always remained in Fish Bros. or those claiming under them. Evidence was also taken tending to show that the Fish Bros. had taken other sums from the proceeds of the business,

which had not been used by them in purchasing real estate and other property for carrying on the business, or for making permanent improvements in the shape of buildings and fixed machinery on the real estate upon which the business was located.

Upon the filing of the reports of the referee upon the matters so referred, and upon motion of the plaintiff, *Mr. Case*, with the consent of the appellants, was appointed a receiver of all the property and effects, both real and personal, belonging to said business, and thereupon a final judgment was entered in substance as follows:

1. Adjudging that the contract between the parties in relation to the matters was, in substance, as claimed by *Mr. Case*, and as adjudged by this court on the former appeal.

2. That the amount of money advanced by *Mr. Case*, with the interest and charges, to January 1, 1876, and which had not been refunded to him by Fish Bros., was $154,364.94.

3. That the amount of money so advanced, with interest, to the 15th day of October, 1883, amounted to the sum of $212,546.87; and that this last amount includes all sums so advanced, with the interest thereon, whether secured by mortgage or otherwise.

4. That a certain parcel of real estate, particularly described in the judgment, had been purchased by said Fish Bros. with money belonging to the business, and conveyed to the plaintiff, and had been used in connection with said business.

5. That several other parcels of real estate, particularly described in the judgment, had been purchased by the said Fish Bros. with the money belonging to said business, the title to which was held by some one of the appellants, and were purchased for and used by the parties in said business.

6. That the title to the several last-described parcels of land be divested out of the defendants, and all persons

claiming under them with knowledge, etc., and that they be sold to realize any deficiency which may remain after the appropriation of all the other property of the business shall have been made to the payment of the sums advanced by the plaintiff.

7. That during the continuance of said business the appellants, and those under whom they claim, expended large sums of money, the proceeds of said business, in enlarging and improving the buildings and works upon the lands belonging to said appellants or their predecessors in interest, the title to which was in said Fish Bros. at the time the agreement of the parties was entered into, amounting in all to the sum of $38,591.36.

8. That the plaintiff, *Mr. Case*, had paid out of the proceeds of the business the sum of $2,000, prior to 1873, to satisfy a mortgage given by the said Fish Bros. previous to 1867, upon a parcel of land which had been purchased for and was used in connection with said business; and adjudging that the plaintiff have a lien upon said tract of land for the said sum of $2,000, and the interest thereon, in case the said Fish Bros. should fail to refund to said plaintiff the moneys advanced by him.

9. It was adjudged that if the defendants pay to the plaintiff, within six months from the date of the judgment, the sum of $212,546.87, with interest at ten per cent. per annum from October 15, 1883, then the plaintiff, both as individual and as receiver, shall turn over to the defendants all the personal property and real estate belonging to said business, on the further condition that all the indebtedness of said business at the time of the commencement of this action has been paid and satisfied by the defendants.

10. "It is further ordered, adjudged, and decreed that in case the said defendants shall not, within six months from this date, pay to the said plaintiff the said sum of $212,546.87, with interest at the rate of ten per cent. per

annum from October 15, 1883, and shall not pay off and discharge, as herein provided, all the indebtedness of said business for which the said plaintiff is personally liable, then and in that event the receiver heretofore appointed herein, and who is hereby continued as receiver until the further order of this court, shall sell and dispose of all the said business and personal property belonging thereto,— whether at the commencement of this action, or whether it has since then, and up to the time of the sale, been acquired in said business,— as a whole, such course seeming best to this court in the interest of all concerned, and as most likely to produce the largest price therefor than if sold in parcels; that such sale be made at public auction, upon a notice of four weeks, which notice shall be given in the same manner as is provided by law with respect to sales of personal property on execution; that the said receiver at such sale shall sell and dispose of the said business and personal property to the highest bidder, for cash; that the plaintiff or the defendants, or either of them, be permitted to purchase at such sale; and that the receiver forthwith report to this court, upon such sale, his doings thereon, and the amount received from the sale of such property, and that the proceeds thereof be applied in satisfaction of the plaintiff's claim herein, in the following order and manner:

" *First*, to the costs and expenses of such sale, and payment of the costs and disbursements of this action.

" *Second*, to the payment and satisfaction of so much of the plaintiff's claim hereby adjudged to him, including such debts or claims as he may be liable for and compelled hereafter to pay, as is not secured by mortgage upon real estate or by the lien hereby declared to exist upon the real estate.

" *Third*, to the satisfaction of the lien upon the premises mortgaged to the plaintiff, which has herein been specifically declared and adjudged, for improvements placed thereon out of the proceeds of said business.

"*Fourth*, to the satisfaction of the amount hereby adjudged to be due upon the said mortgage to the plaintiff.

"And if the same be not sufficient to satisfy the said claim of the plaintiff, that then the said plaintiff shall be at liberty to sell the said several parcels of real estate, and to foreclose the said mortgage and the lien upon the said mortgaged premises hereby established, as is herein provided.

"It is further ordered and adjudged that the receiver heretofore appointed continue the said business as heretofore ordered, and until the further order of the court; and that he have leave to apply to this court from time to time for such directions and orders, in and about the conduct of such business, as to him may seem proper; and that he report to this court by the 10th day of June, 1884, what amount, if any, has been received by him from the said business, over and above the amount which the receiver has been or may be hereafter authorized to pay by the orders of this court, that the same may be applied upon the plaintiff's claim herein.

"It is further ordered and adjudged that the plaintiff do have and recover of the said defendants, and each of them, the sum of $1,562.18, for his costs and disbursements in and about this action as taxed, and that the said amount of costs and disbursements is added to and made a part of the sum for which he is entitled to payment out of the proceeds of said business, and is placed on the same footing in all respects as the principal amount found due to him by this judgment.

"It is further ordered and adjudged that in case the plaintiff shall be unable to obtain satisfaction of his claim, or of any part thereof, under this decree, as are above provided for, leave is hereby reserved to him to apply on the footing of this decree for proper proceeding to ascertain what sums, if any, have been taken by the defendants, or

either of them, from the said business, over and above what they are legally or equitably entitled to, to the end that he may recover of them the amount of such deficiency, or so much thereof as they shall respectively have illegally or inequitably received from said business, if found entitled thereto."

To this judgment the defendants excepted, and to each part thereof separately.

The eleventh and eighteenth exceptions of the defendants, to our minds, are the material exceptions in the case, and present the important issues bearing upon the equitable rights of the parties to the action. The following are the exceptions:

"*Eleventh.* The defendants except because the court fails to adjudicate that the plaintiff pay out of the proceeds of the receiver's sale the debts incurred in conducting said business, and because the court nowhere adjudicates what class of debts the plaintiff is liable to pay, and for what debts he may retain and sell said property, and gives the defendants no means of ascertaining what sum they must pay the plaintiff to obtain a conveyance of said several parcels of real estate, and no term fixed when plaintiff could no longer hold the same to indemnify himself against liability."

"*Eighteenth.* The defendants except to so much of said judgment as is found in folios 67, 68, 69, commencing with the words, 'It is further ordered, decreed, and adjudged that in case the said defendants shall not, within six months,' and ending with the words, 'in satisfaction of the plaintiff's claim herein, in the following manner.'"

In our view of the case, if these exceptions are not well taken, all the others are equally unavailable to the defendants.

The judgment entered in the action goes upon the theory that the contract relations between *Mr. Case* and the defendants ceased upon the commencement of this action, and

that the plaintiff is entitled to have all the property and assets of the business on hand at the time the receiver was appointed, appropriated in the first place to the payment of the sums due him for advances made previous to the commencement of the action, notwithstanding such property has been purchased in most part, or to a large extent, by the defendants upon their personal credit, and they are still indebted for such purchase money.

The success of the plaintiff on his appeal from the original judgment in this action depended mainly, in the opinion of this court, upon the relation he sustained to the defendant as to the business. Had this court held the same opinion as was held by the circuit court, and decided that the relation of the parties was that of creditor and debtors, it is apparent that the claims of *Mr. Case* upon the defendants would have been most materially diminished. Having sustained his right to claim large sums for interest, commissions for use of his credit, and for clerk hire and expenses, on the ground that the defendants were conducting the business as his agents, he being all the time the actual owner, with a contingent interest in favor of his agents, he must abide by the position so taken by him. He commenced this action in order to have his rights determined, and we are disposed to hold that, up to the time his rights were determined by the decision of this court, the defendants must be held to have been in possession of the business, conducting the same for his benefit under the original agreement, except that if they chose to continue it after *Mr. Case* forbade them from contracting debts in his name and upon his credit, they would not have the power to make him personally liable for the debts contracted in further carrying on the business.

It seems clear to us that there was no bad faith on the part of the defendants, so far as the evidence discloses, in continuing the business; nor does the evidence disclose that

they have carried on the same in a reckless or improvident manner. The fact that no receiver was appointed in the case pending the action until after the *remittitur* from this court, is strong presumptive evidence that the business was carried on in a proper and prudent way. This court, in its former opinion, says: "The plaintiff could not, by reason of his superior interest, take advantage of the defendants, or dismiss them at will from the management of the business. But it is not easy to define the relation of the parties under the agreement. It would not essentially aid us in the solution of the questions involved, if we should attempt to do so, and try to properly classify the engagement. The parties' rights rest upon the contract which they have made. It is peculiar in many features." And it might be further added that it was a contract resting in parol, yet involving in the end a business amounting to hundreds of thousands of dollars annually. We do not think that the mere fact that the defendants differed with the plaintiff as to the legal effect of such agreement should debar them of all rights under it, pending a litigation to determine what their rights were. They can hardly be said to have denied the terms of the contract between the parties; they rather rested their claims upon the legal effect of the contract made.

There is nothing in the evidence which shows that the defendants did not intend in good faith to carry out the contract between the parties as it should be finally interpreted by the court. The fact that they paid off something like $250,000 of debts and liabilities for which *Mr. Case* was personally liable, and which he would have been compelled to pay, without any remedy over against the defendants, had they surrendered the business into his hands when he commenced this action, is the strongest kind of evidence that they hoped, at least, to be able to carry on the business under their contract with *Mr. Case* to a successful

issue, whatever interpretation might be put upon it by this court.

The respondent, in the judgment taken in this cause, virtually goes upon the theory that everything purchased by the defendants for the purpose of carrying on the business, whether paid for by them or purchased upon credit, became a part of the property and assets belonging to the business, and became the property of the respondent, by reason of the fact that he remained the owner of said business all the time, as well after as before the action was commenced, and that he is, in closing up the business, entitled to sell all such property in order to refund to himself the moneys advanced by him; at the same time he does not consider himself bound to account to the defendants, either at law or in equity, for the $200,000 and upward of the personal debts of the respondent, which the defendants have paid off on his account since the commencement of this action, nor to pay out of the assets received by him any part of the $230,000 of the debts incurred by the defendants in carrying on the business, paying off the plaintiff's debts, and purchasing the property now claimed to be owned by him. We do not consider this method of closing up the business in accord either with the principles of law or equity.

To our minds the rights of the plaintiff must be ascertained upon one of two theories, viz., either upon the theory that the defendants were wrongfully in possession of the property of the plaintiff immediately upon his giving notice and commencing this action; or upon the theory that they remained in possession under the contract between the parties, subject to the determination of the court as to their rights under it.

If all contract relations between the parties ceased upon the commencement of this action, then the rights of the parties were fixed at that time, and the interest of the plaintiff in the property and business was then fixed, and

would be limited to the value of such property and business, subject to the payment of the amount of the debts which the plaintiff then owed for the purchase of the same; and it is probable that, in an action at law brought by the plaintiff to recover damages for the conversion of said business and property by the defendants, his damages would be limited to such value, less the amount of the debts owing by the plaintiff for the purchase thereof, if it appeared that the defendants had, after the conversion, paid off and discharged the same; but if there be any doubt whether, in a legal action, the defendants could avail themselves of the fact of the payment of said debts in mitigation of the plaintiff's damages, there can be no doubt that, if the plaintiff came into a court of equity to obtain compensation for such conversion, such court would mitigate such compensation by deducting therefrom the amount of such debts so paid by the defendants. A court of equity, in adjusting the rights of the parties on the theory that the defendants were wrong-doers and had in fact converted the property of the plaintiff at the time the action was commenced, must necessarily, we think, ascertain the value of the property at that time, and charge the defendants with that sum, crediting them with all sums that they have in the mean time paid out in extinguishment of the plaintiff's debts incurred in the purchase thereof; and would, if necessary to protect the plaintiff's rights, transfer to a receiver what remained undisposed of, which was on hand at the time of the commencement of the action, and no more.

That this would be the rule, on the theory that the defendants converted the property at the commencement of the action, is, we think, evident, if we apply it to a case where the plaintiff had, in fact, advanced a large sum of money in carrying on the business, and, at the time of his endeavoring to close the same up, the debts incurred by him were, in fact, equal to or exceeded in value the whole

amount of the property in the business, including what is called the good-will thereof. The value of the property converted, upon this theory of conversion, would be its value at the time of the conversion; and if, on the final hearing, it appeared that such value did not exceed the amount of the debts due from and owing by the plaintiff, incurred in the purchase of the materials and carrying on the business up to that time, and it further appeared that the defendants had paid off and satisfied all of said debts, it would seem that the plaintiff would have no claim for any further damages against the defendants. And if the defendants had made the business a paying one, and had obtained large amounts of other property and put it in said business, the plaintiff would have no claim to such property in order to secure him for the money expended by him in a fruitless attempt to make the business a profitable one up to the time he saw fit to abandon the enterprise and fix the liabilities of the defendants to him in relation thereto.

But we are not disposed to treat the case upon the theory of a conversion of the property of the plaintiff by the defendants at the time of the commencement of the action; but, on the other hand, in the absence of any proof of bad faith on the part of the defendants, or any want of ordinary care in the conduct of the business by them after the action was commenced and down to the time of the appointment of the receiver therein, and in consideration that there were certainly reasonable doubts as to the relations which the parties held towards each other in regard to this great business, we feel fully justified in holding that the defendants must be held to have conducted the business, down to the appointment of the receiver, as the agents of the plaintiff as fully as they were before the commencement of the action, except that they had no authority to bind *Mr. Case* personally for the debts incurred by them in carrying on the same; and we must also hold that, in the closing up

and settlement of the business, all the property, both real and personal, belonging thereto originally, and which was transferred to the plaintiff by the defendants, and all which has been subsequently acquired by the defendants and paid for out of the proceeds of the business, must pass into the hands of the receiver and constitute a fund for the payment (1) of the taxable costs of this action, and the expenses of the receiver in closing up the business; (2) all the debts fairly incurred by the defendants in carrying on the business up to the time of the appointment of the receiver; and (3) for the payment of the balance found due to the plaintiff for money advanced by him in carrying on the same business, with interest at the rate of ten per cent.; and, after paying said costs and expenses, said debts, and the claims of the plaintiff, the balance, if any, shall be turned over to the defendants.

We are also of the opinion that if the property and assets of the business are insufficient to pay all the sums above indicated, then the plaintiff is entitled to enforce a lien upon the real estate of the defendants for any balance remaining unpaid, not exceeding the value of the permanent improvements and fixtures placed upon such real estate by the defendants, and which were paid for out of the proceeds of said business.

We are also of the opinion that if it be established by competent evidence that the defendants have diverted any other sums of money to their own personal use, in excess of the amount allowed them as their annual compensation under the contract, and, after exhausting all the property above specified in the payment of the said costs and expenses, debts, and claims of the plaintiff, there shall still remain any sum unpaid, the plaintiff may have a personal judgment against the defendants for the sums, if any, so diverted from said business to their respective uses, not exceeding in amount the sum remaining unpaid to the plaintiff.

In adopting in substance the contention of the learned counsel for the appellants as to the basis upon which this business must be brought to a close, we have done so the more readily from the fact that, so far as is disclosed by the record, the plaintiff is not placed in a more unfavorable condition than he would have been had the whole business been surrendered to him at the time of the commencement of the action. Apparently, the outstanding debts at that time, and for which he was personally liable, were fully equal in amount to the outstanding debts at the time of the appointment of the receiver, and with which the fund in the hands of the receiver is made chargeable, while the property and assets of the business which have passed to the hands of the receiver do not appear to be of less value than they were at the time of the commencement of the action. If the plaintiff is put in a worse position by means of any general depression in the business at this time than he would have been could he have had control of the matter at the time of the commencement of the action, that result must be charged to the law's delay, rather than to any wrong done by the defendants.

While we are not disposed to direct definitely in what manner the receiver shall proceed in closing up this business, converting the property and assets into money, and applying the same in the discharge of the claims which are a charge thereon, being aware that that subject must, in a very great degree, be left to the judgment and discretion of the court appointing the receiver, we are inclined to hold that the order directing the sale of this very large business, and all the personal property belonging thereto, as a whole, is not calculated to produce the most money, or to be most advantageous to all parties interested. Such a sale must of necessity limit the bidders to a very few persons, and probably to the plaintiff alone. His claim to the fund to be realized from the sale being so much greater than that of

any other person, in fact than all others combined, would give him a great advantage over every other bidder at such a sale. While we can readily see that the buildings, machinery, fixtures, and material in process of construction, and good-will of the business, would probably bring more money sold as a whole and together than sold in parcels, we are unable to see how it is likely that the finished wagons or other vehicles on hand, or even the materials on hand which have not been partially converted into parts of manufactured vehicles, would be likely to sell for more ready money when sold in very large than when sold in smaller quantities. As to the finished wagons and other vehicles, we see no reason why they could not be sold to the best advantage in the ordinary way of the business, rather than in any other. If they can be so sold within a reasonable time, it seems to us that course ought to be pursued; and if they cannot be so sold within a reasonable time, then we think they should be sold in separate parcels, and at such times and in such manner as will be likely to be most advantageous to all parties, and not sold as a part of the entire business. Nor do we see how it would be profitable to sell the good and collectible debts due the business, rather than to collect them in the ordinary methods of business. We would suggest, therefore, that in entering a new order and judgment upon this subject, the suggestions above made should be regarded, unless the parties interested shall consent to some other method of procedure on the part of the receiver.

An exception was taken by the defendants to the allowance to the plaintiff of the sum of $5,665.55, being the amount of two per cent. on the accounts and notes for the years 1874 and 1875, which it was claimed by the appellants was not included in the settlement made January 1, 1876, and should not, therefore, have been allowed in the statement of the amount due the plaintiff. We are inclined

to hold that, under the decision of this court on the former appeal, this sum was properly allowed to the plaintiff. Such sum, although not brought into the settlement of January 1, 1876, it appears from the evidence had been agreed upon by the parties as compensation for the use of the plaintiff's name and credit up to that date. We see no error, therefore, in the statement of the amount which the plaintiff is entitled to receive for his advances to the business, and there will be no necessity of any further reference to take an accounting upon that subject.

It does not appear to us that there is any error shown in taking the account of the real estate which has been purchased by the defendants with the proceeds of the business, and which should be made subject to sale, if necessary, to pay for the debts contracted by the defendants in the business, and the amount which is found due the plaintiff for his advances; nor in ascertaining the sums of money which have been expended out of the proceeds of the business in making permanent improvements and placing fixed machinery upon the lands owned by the defendants, and upon which the business has been carried on; nor in deciding that the plaintiff shall have a lien upon such real estate for the value of such improvements and machinery, which he may enforce by sale of such real estate, if necessary, to pay any balance which shall remain unpaid after all the other property and effects of the business shall have been applied to the payment of the debts contracted by the defendants in carrying on the business, and to the payment of the amount allowed the plaintiff for his advances, with interest, and the costs of the action, and the expenses of the receiver in closing up the business.

If it shall be made to appear to the court that the defendants, or either of them, have converted to their individual use any moneys which were the proceeds of such business, over and above what they were authorized to withdraw

therefrom according to the agreement of the parties, and which has not been invested in the purchase of lands to be used in such business, or in making improvements thereon, the circuit court may direct a further reference to ascertain the amounts of money so converted, in order that the plaintiff may have a personal judgment against the party or parties so converting the same, for any deficiency which may remain unpaid to him for his advances after the application of all the property in the hands of the receiver shall have been made to the payment thereof, so far as the same can be applied for that purpose, in accordance with this opinion.

For the error of the court below in refusing to direct that the property, effects, and business in the hands of the receiver should be first chargeable with the payment of the debts fairly contracted by the defendants in carrying on said business down to the time of the appointment of the receiver, after payment of the costs of this action and the expenses of the receiver in closing up the business, before applying the proceeds of such property and business to the payment of the amount allowed to the plaintiff for his advances in such business, as well as for the misdirection of the court as to the manner in which the receiver is directed to sell and dispose of said property and business, the judgment of the circuit court must be reversed. We see no reason for reversing the order for the appointment of the receiver, which was also appealed from in this case.

*By the Court.*— The order appointing the receiver in this action is affirmed. The judgment appealed from is reversed, and the cause remanded to the circuit court with direction to enter a judgment in accordance with this opinion.

LYON, J., took no part.

A motion for a rehearing was denied June 24, 1885.