Phillips vs. McGrath and wife, imp.

PHILLIPS vs. McGRATH and wife, imp.

*December 19, 1884 — January 13, 1885.*

MORTGAGES: EQUITY. *(1) Findings as to fraud sustained. (4) Foreclosure when amount unpaid is trifling: Evidence.*
AGENCY: EVIDENCE. *(2) Holding out person as agent: Payments. (3) Transactions with deceased agent: Waiver of objection.*

1. Findings of the trial court that the mortgagor had been deceived by the plaintiff into giving the mortgage in suit on the supposition that a previous mortgage, for which it was substituted, was a valid lien, and as to certain payments, are *held* to be sustained by the evidence.
2. One who expressly sanctions a payment to another person as his agent, and who knows that his debtor regards such person as the person to whom payments should be made, will be bound by subsequent payments to such agent.

3. A party who fails to object to the admission of evidence as to transactions with his deceased agent and then testifies as to transactions between himself and such agent, cannot afterwards have such evidence stricken out.

4. Where the dates of payments upon an interest-bearing note are not definitely fixed and the parties have for a long time treated it as fully paid, the court will not, in an action to foreclose the mortgage securing such note, examine closely into the facts for the purpose of holding that three or four dollars remain unpaid. It is doubtful whether a bill in equity should be sanctioned for so trifling an amount.

APPEAL from the Circuit Court for *Crawford* County. Action to foreclose a mortgage given to secure two promissory notes. The case is thus stated by Mr. Justice CASSODAY:

"The defendant *Patrick McGrath* obtained the title to the mortgaged premises in question, November 1, 1856, by purchase and deed of conveyance from his brother, Thomas McGrath, and wife, and which deed was recorded two days afterwards. Notwithstanding that conveyance, Thomas and wife mortgaged the same land to the plaintiff, January 7, 1857, to secure his note for $100, and that mortgage was recorded March 7, 1857. *Patrick*, having been induced to believe that that mortgage was a lien upon his land, gave the notes and mortgage in suit, November 17, 1862. One of the notes was payable in two years and the other in three.

"This action was brought February 21, 1881. The plaintiff claims that nothing had ever been paid on the notes or mortgage except $40, indorsed thereon as received by the hand of W. A. Campbell, December 20, 1865; that the plaintiff had been compelled to pay in the aggregate $55.24 for four tax certificates for the years 1880–83; and judgment was claimed for the amount due for principal, interest, taxes, $15 solicitor's fees secured by the mortgage, and the costs and disbursements of the action. The answer alleged, in effect,

*Patrick's* purchase and deed in 1856, the note and mortgage of Thomas in 1857, and that that mortgage was a nullity; that the defendants were induced to give the notes and mortgage in suit by false and fraudulent representations, and that there was no other consideration; that there had been paid thereon prior to November 25, 1867, $275; and that the balance due thereon was fully paid on said last-mentioned date; and then, by way of counterclaim, sought to recover back the amount so paid by reason of the false and fraudulent representations so alleged.

" The court found, in effect, the giving of the deed and the several notes and mortgages as stated; that *Patrick* had been deceived by the plaintiff and his agents into giving the notes and mortgage, on the supposition that the mortgage given by Thomas was a valid lien upon the land; that one W. A. Campbell was the authorized agent of the plaintiff for the collection of the notes and mortgage in suit; that in September, 1865, *Patrick* paid to Campbell, as such agent, to apply on his notes and mortgage, the $40 admitted in the complaint; also $100 in November, 1866; also $60 in 1867.

" As conclusions of law the court found that judgment should be entered dismissing the complaint upon the merits, and for the cancellation of the mortgage from the records. From the judgment entered accordingly the plaintiff appeals."

*D. Webster*, for the appellant.

*Wm. H. Evans*, for the respondents.

CASSODAY, J. The contention relates principally to matters of fact. To detail and analyze the evidence would consume valuable space without any practical benefit. After carefully reading the printed case, none of us find any such convincing evidence of any different fact as would authorize this court to disturb any of the findings of the trial court. The circumstances under which the plaintiff procured the

notes and mortgage without any consideration, and when *Patrick* was under no sort of obligation to pay his brother's debt, are, at least, very suspicious. Campbell's letters to the plaintiff, put in evidence by the latter, pretty clearly indicate that he was authorized to receive payments on the notes and mortgage, and that he did receive one payment with the express sanction of the plaintiff. After that payment he informed the plaintiff, in effect, that *Patrick* wanted to pay up the notes and mortgage as fast as he could, and predicted that he would do so; that he could get the money of *Patrick*, who thought there was no other man to whom he could make payment but himself. Having been thus informed that *Patrick* regarded Campbell as the proper person to whom payments should be made, the plaintiff could not remain silent until after the payments were in fact made, and then, on failure to receive the amount collected from Campbell, repudiate the payments. In other words, such holding out of agency was sufficient to bind the plaintiff within the well-established rule. *Bouck v. Enos*, 61 Wis. 660.

Moreover, we think, it appears from the evidence that the whole amount of the balance on the notes was paid to Campbell some time in 1867. The fact that about that time the plaintiff was pressing collection and threatening foreclosure, and thereafter remained silent and let the matter rest for about fourteen years, suggests the inference that the plaintiff knew that Campbell had made the collection and had been looking to him for repayment.

It is urged that *Patrick's* testimony as to his transactions with Campbell was improperly admitted, and should have been stricken out on motion of the plaintiff, because Campbell was dead at the time of the trial. The evidence was given without any objection, and then, by way of rebuttal, the plaintiff not only gave testimony as to his transactions with Campbell, but also put in evidence Campbell's letters

to himself. Besides, there is no evidence in the record of the death of Campbell, unless it be inferred from a letter written by *Patrick* to the plaintiff in 1881, and put in evidence by the latter, in which he incidentally speaks of having heard that he was dead. This letter being in possession of the plaintiff, he must be presumed to have had knowledge of its contents, and, having had such knowledge prior to the trial, he should have raised the objection when the testimony was first offered, instead of waiting till the testimony was all in, and he had put in his rebutting testimony of the character indicated, without suggesting any excuse for the delay. Parties cannot thus speculate with the chances, and then avail themselves of the aid of the court, as a matter of right, to relieve themselves from the results of their own speculation. Besides, the motion was "to strike out all, and each and every part and portion, of the testimony offered and introduced in evidence by the defendant." This was altogether too broad, as it sought to exclude much testimony which was proper, and also to allow the testimony of the plaintiff himself, and the letters of Campbell upon the same subject, to remain as evidence.

The plaintiff insists that there were a few dollars due him on any theory, but the times of payment were not very definitely fixed, and Campbell and *Patrick* having treated the notes as fully paid, equity will not go into a very close discrimination for the purpose of holding that there was three or four dollars still due, and thus authorize a judgment of foreclosure and sale, and its attendant costs, disbursements, and solicitor's fees. Whether a bill in equity would be sanctioned for such a trifling amount may be doubtful.

The plaintiff, having purchased his tax certificates after the mortgage was paid, must be relegated to some other remedy thereon. We discover no material error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.