PLATT, Appellant, vs. SCHMITT, Respondent.

*March 24—April 17, 1903.*

*Promissory notes: Payment: Agency: Ratification.*

The maker of six several notes secured by mortgage paid the first of them to one R., a banker, who had been present when the mortgage was executed and who delivered up said note to him marked "Paid." Afterwards he paid to R. an instalment of interest on the remaining notes. After the maker's death his widow paid the second and third notes, and interest on the others, to R., taking receipts; but the notes so paid were not surrendered to her. The owner of the notes—to whom they had been indorsed on the day they were executed and who presumably had knowledge of the payments to R.—died about a year after the payment last mentioned. The fourth and fifth notes, with interest thereon and on the sixth, were paid by the widow of the maker to the widow of said indorsee, who had succeeded to their ownership, and who gave receipts consistent only with the theory that the payments to R., of which she had knowledge, were valid. Neither the said indorsee nor his widow ever made any claim upon the notes paid to R., but both treated and recognized them as paid. *Held,* that the payments to R.

had been ratified by both the indorsee and his widow, and that one claiming to own the second and third notes by assignment from the widow's executor, made after the maturity of said notes, was bound by such ratification.

Appeal from a judgment of the county court of Dodge county: J. A. Barney, Judge. *Affirmed.*

This action was commenced about May 1, 1900, to foreclose a mortgage upon real estate. The complaint alleges, in effect, that such mortgage was executed by Peter Schmitt and *Josephine,* his wife, March 28, 1894, to Bernard Hauser, to secure six notes of even date, amounting in the aggregate to $6,500, and each executed by Peter and *Josephine Schmitt* to Bernard Hauser—each drawing interest annually at five per cent. per annum—two of which notes, of $500 each, became due March 28, 1896; one of which notes, of $500, became due March 28, 1897, and which is admitted to have been paid; and two others of which notes, of $500 each, became due March 28, 1898, and each of which is admitted to have been paid; and the other of said notes, for $4,000, became due March 28, 1898. The answer admits that the $4,000 note is unpaid, and pleads and makes tender of the same, and alleges that all the other notes have been paid.

At the close of the trial the court found, in effect, (1) that Peter Schmitt died September 12, 1895, leaving, him surviving, his widow, *Josephine,* and his children; (2, 3) that the six notes referred to were all executed and delivered by Peter Schmitt to Bernard Hauser March 28, 1894; that the five notes, of $500 each, became due and payable, respectively, February 13, 1895, 1896, 1897, 1898, and 1899, and the note of $4,000 became due February 13, 1900; that, on the same day the notes were so executed and delivered, Peter and *Josephine Schmitt* executed and delivered to Hauser the mortgage referred to, to secure said notes; that on the same day, March 28, 1894, Hauser sold and assigned said notes

and mortgage to one J. J. Williams; (4) that September 18, 1894, Peter Schmitt paid the $500 note which became due February 13, 1895, including the interest, and the note was delivered up and canceled; (5) that after the death of Peter Schmitt, September 12, 1895, and during the lifetime of J. J. Williams, the widow, *Josephine,* paid two of the said $500 notes, to wit, the note which became due February 13, 1896, and the note which became due February 13, 1897, respectively, including the interest which remained due and unpaid thereon, which two notes had not been actually surrendered at the time of the death of J. J. Williams, which occurred December 20, 1896; (6) that J. J. Williams left a last will and testament, wherein his widow was named as executrix and residuary legatee; (7) that January 26, 1897, said will was admitted to probate, and the widow duly qualified and acted as such executrix; (8) that February 10, 1897, *Josephine Schmitt* paid to Lurenza J. Williams, as such executrix, interest upon said notes remaining unpaid in full to March 28, 1897, and received from her therefor her receipt as follows:

"Beaver Dam, Wis., Feb. 10, 1897.

"Received from *Mrs. Peter Schmitt* this date $250.00, in full for interest on $5,000.00, to March 28th, 1897.

"MRS. J. J. WILLIAMS, Executrix;"

(9) that March 28, 1898, *Josephine Schmitt* also paid to Lurenza J. Williams, as such executrix, the note which became due February 13, 1898, together with the interest thereon, and upon the $4,500 secured by the mortgage and remaining unpaid at the time, and said note so paid was surrendered by said executrix; (10) that March 27, 1899, *Josephine Schmitt* paid to Lurenza J. Williams, as such executrix, $725 in payment of the last $500 note (being the one which became due February 13, 1899), and interest on the remaining $4,000 note in full to March 28, 1899, and

upon making such payment she received from her son and agent, W. H. Stacy, a receipt as follows:

"Beaver Dam, Wis., March 28, 1899.

"Received of *Mrs. Peter Schmitt* $750.00, being interest in full for one year on $4,000 and note of $500, due February 13th, 1899.

"MRS. J. J. WILLIAMS, by W. H. Stacy.

"Pays interest to March 28th, 1899"—

and said $500 note, which became due February 13, 1899, was delivered up and canceled; (11) that November 29, 1899, Lurenza J. Williams died testate; that January 2, 1900, her will was admitted to probate, and E. L. Hall was duly appointed as executor of her estate and qualified as such; (12) that neither J. J. Williams, nor his widow, Lurenza J. Williams, during their lifetime, made any claim upon the two notes of $500 each maturing February 13, 1896, and February 13, 1897, after their payment as before stated, but, on the contrary, both of them treated and recognized them as paid; (13) that February 19, 1900, E. L. Hall, as such executor, at the request of the plaintiff, made a written assignment of said mortgage and $4,000 note to the plaintiff, which assignment purported, also, to convey to the plaintiff the two notes which fell due February 13, 1896, and February 13, 1897, and which had been paid during the lifetime of J. J. Williams, but not surrendered as aforesaid, and delivered said mortgage and notes to the plaintiff, who thereupon claimed to be the owner thereof; (14) that March 23, 1900, and before the commencement of this action, and while the plaintiff had possession of said notes and mortgage, claiming to be the owner thereof, the said *Josephine Schmitt* duly tendered to the plaintiff the full amount so remaining unpaid upon said notes and mortgage, including the interest to March 29, 1900, to wit, the sum of $4,200 in cash in payment of said indebtedness, but that the plaintiff refused to accept or receive the same, and the same was thereupon on the same day deposited in the Citizens' Bank of Juneau, in

Dodge county, for the plaintiff, and the plaintiff was notified thereof, and said sum has been brought into court and deposited with the clerk for the plaintiff, and the clerk's receipt therefor delivered to the plaintiff, pursuant to the rules of the county court and the statute in such case made and provided; (15) that all of said notes were made payable to Bernard Hauser, or order; that none of them were transferred by indorsement, and the plaintiff paid no valuable consideration for them or for said mortgage.

And as conclusions of law the court found, in effect, that the plaintiff was the owner and holder of the $4,000 note, and the mortgage securing the same, but is not a *bona fide* holder thereof for value; that the indebtedness secured by the mortgage, except the $4,000 note and interest thereon from March 28, 1899, was fully paid and discharged before the notes and mortgage were assigned to, or came into the possession of, the plaintiff; that by the tender of the $4,200, and keeping the same good, and bringing the same into court for the plaintiff, the lien of the mortgage on the land was discharged by operation of law; that the plaintiff is not entitled to recover herein, and the complaint should be dismissed, with costs—and ordered judgment accordingly. From the judgment so entered the plaintiff appeals.

For the appellant there were briefs by *A. C. Umbreit,* attorney, and *Hoyt, Doe, Umbreit & Olwell,* of counsel, and oral argument by *A. C. Umbreit.*

For the respondent there was a brief by *Sawyer & Sawyer,* and oral argument by *E. W. Sawyer.*

CASSODAY, C. J. The questions involved are mostly matters of fact. To the several findings of the court there are few exceptions. There is no dispute but that the mortgage was given by Peter Schmitt and wife, March 28, 1894, to secure six notes, five of which were for $500 each, and one for $4,000, and each with interest at five per cent. per

annum. The complaint erroneously alleges that the several notes were signed by *Mrs. Schmitt,* as well as her husband, and also as to the respective dates at which the several notes became due and payable, as appears from the third finding, to which no exception is taken. There is no dispute as to the $4,000 note. It is conceded that the note of $500 which became due and payable February 13, 1895, was paid by Peter Schmitt and taken up during his lifetime. So it is conceded that the defendant *Mrs. Schmitt* paid and took up two of the $500 notes which became due and payable, respectively, February 13, 1898, and February 13, 1899. The real controversy is whether the two $500 notes which became due and payable, respectively, February 13, 1896, and February 13, 1897, were paid during the lifetime of J. J. Williams, as found by the trial court. The claim is that such payment was in fact made to one Rambusch with the consent, acquiescence, and authority of Mr. Williams. As bearing upon the question, it should be observed that on the same day of the execution of the several notes and mortgage, March 28, 1894, they were all transferred by an assignment made by Bernard Hauser, to whom they were made payable, to J. J. Williams; that Peter Schmitt died September 12, 1895, leaving the defendant, his widow, and their children, him surviving; that Rambusch committed suicide October 20, 1896; that J. J. Williams died testate December 20, 1896; that his will was admitted to probate January 26, 1897; that his widow, Lurenza J. Williams, was named therein as executrix and residuary legatee; and she thereupon qualified as such executrix; that Mrs. Williams died testate November 29, 1899, and her will was admitted to probate January 2, 1900, with· E. L. Hall named therein as executor, who was duly appointed as such executor and qualified; that February 19, 1900, Hall, as such executor, assigned the $4,000 note and mortgage to the plaintiff, a son of Mrs. Williams by a former husband, and that such assignment also purported to

transfer to the plaintiff the two $500 notes which became due and payable, respectively, February 13, 1896, and February 13, 1897. It is a significant fact that the $500 note due and payable February 13, 1895, was actually paid to Rambusch, September 13, 1894, and taken up and marked "Paid," with a receipt attached, of which the following is a copy:

"Juneau, Wis., September 13, 1894.
"Received of Peter Schmitt, $515.07, payment of note of five hundred dollars and interest thereon from February 13th, 1894.           W. T. RAMBUSCH, per Chas. Hawks."

That pretty clearly shows that in that transaction Rambusch acted as the agent of J. J. Williams in receiving the $515.07, and delivering up the note to Peter Schmitt. So it appears that less than three months afterwards, and on December 4, 1894, Peter Schmitt paid to Rambusch $300 interest to March 28, 1895, on notes, and took his receipt therefor; that October 9, 1895, the defendant, *Mrs. Schmitt,* paid to Rambusch $512.50 to apply on mortgage "and interest on said $500" to date, and took his receipt therefor; that December 3, 1895, the defendant, *Mrs. Schmitt,* paid to Rambusch, "$775, being interest in full on $5,500 to March 28, 1896, and $500 to apply on principal, leaving a balance due of principal of $5,000," and took his receipt therefor. As indicated, all of those payments were so made to Rambusch during the life of Mr. Williams, and while he was the owner of all the notes and mortgage. Rambusch was present when the mortgage was executed, and took the acknowledgment. Moreover, it appears that the $500 note due February 13, 1895, remained in the possession of Rambusch until it was paid and taken up, September 13, 1894. Upon the death of Mr. Williams, December 20, 1896, and the probate of his will, all of the notes and the mortgage became the property of Mrs. Williams. As found by the trial court, February 10, 1897, the defendant, *Mrs. Schmitt,* paid to Mrs. Williams, "$250 in full for interest on $5,000 to March 28, 1897," and

took her receipt therefor as executrix, stating the fact. This is consistent only on the theory that the several payments so made to Rambusch were in full payment and satisfaction of the three $500 notes, which became due, respectively, February 13, 1895, February 13, 1896, and February 13, 1897, and the interest on the other notes to March 28, 1896. So the payment to Mrs. Williams by *Mrs. Schmitt* of $750, being interest in full for one year on $4,000, and note of $500 due February 13, 1899," and taking a receipt therefor, stating the fact, is consistent only upon the same theory. Thus it appears that Mr. Williams had been the owner of all six notes and mortgage for nearly three years when he died; and hence he must have known that during that period one of the notes and the annual instalment of interest on all the other notes became due and payable in the winter of 1895, and that another of the notes and the annual instalment of interest on all the other unpaid notes became due in the winter of 1896. And yet it does not appear that during that time Mr. Williams made any claim to Mr. or *Mrs. Schmitt* that either of such notes, or any instalment of interest on the notes, or any of them, had not been paid. A fair inference is that he knew that such payments had been made, and acquiesced therein. And so the court found that neither Mr. Williams nor Mrs. Williams, during their respective lives, "made any claim upon the two $500 notes so maturing February 13, 1896, and February 13, 1897, after their payment as above stated, but, on the contrary, both of them treated and recognized them as paid." This finding is amply supported by competent evidence, and the same is true of the other findings in the case. Of course, if Mr. and Mrs. Williams were bound by the payments so made to Rambusch, then the plaintiff, who claims by assignment from the executor of Mrs. Williams's estate, several years after the maturity of the notes, is equally bound by such payments. It sufficiently appears that Mrs. Williams had knowledge of

such payments to Rambusch when she gave the receipts mentioned, and it may fairly be inferred that Mr. Williams, who lived two months after Rambusch committed suicide, had knowledge of such payments, and acquiesced therein. Such facts bring the case within the well-recognized principle of ratification. *Ladd v. Hildebrant,* 27 Wis. 135; *Phillips v. McGrath,* 62 Wis. 124, 22 N.W. 169. Thus it was said by Mr. Justice FIELD:

"The ratification operates upon the act ratified precisely as though authority to do the act had been previously given, except where the rights of third parties have intervened between the act and the ratification. The retroactive efficacy of the ratification is subject to this qualification. The intervening rights of third persons cannot be defeated by the ratification." *Cook v. Tullis,* 18 Wall. 338.

That was quoted approvingly by COLE, C. J., in *Galloway v. Hamilton,* 68 Wis. 656, 32 N. W. 636. We must hold that the payments made to Rambusch were ratified by Mr. and Mrs. Williams, and that the plaintiff is bound by such ratification. The case is distinguishable from *Bartel v. Brown,* 104 Wis. 493, 80 N. W. 801, and *Spence v. Pieper,* 107 Wis. 453, 83 N. W. 660.

*By the Court.*—The judgment of the county court of Dodge county is affirmed.