Kohl, Respondent, vs. Beach, Trustee, Appellant.

*September 7 — September 25, 1900.*

*Principal and agent: Delegation of agent's authority: Subagents: Collections: Implied authority: Mortgages.*

In an action by the grantee of a mortgagor to compel satisfaction of a mortgage, it appeared, among other things, that defendant, a resident of New York, employed S. as agent to loan money under an

Kohl vs. Beach.

agreement that S. should repay all sums advanced, together with six per cent. interest. S. was authorized to handle the loaning business as if it were his own, defendant knowing that S. must necessarily employ others to assist him. S. employed P. as a subagent under an agreement in regard to loaning defendant's money, that both should receive a percentage therefrom, that P. should make collection and remit to S., and that if collection of interest at maturity could not be made, P. should advance the same to S., in order that he in turn might advance it to defendant. Defendant made a loan to plaintiff's grantor, secured by the mortgage in question, the money being paid over by P., who received the note and mortgage and transmitted them to S., who in turn transmitted them to defendant. Default having been made in an instalment of interest, P. commenced foreclosure proceedings, defendant being named as plaintiff, pending which plaintiff bought the mortgaged premises. At this time the mortgage debt was paid in full to P., who, though he did not have the note in his possession, gave an individual receipt therefor, which was accepted under the belief that he was authorized by the owner of the note and mortgage to receive payment thereof. P. also agreed to procure the note and mortgage, with a satisfaction thereof, and deliver them, which was never done, and P. never remitted the money. *Held* that, in the absence of any facts constituting an estoppel, S. had no authority from defendant to delegate to P. the essentials of his agency involving skill, intelligence, responsibility, and judgment; that P. was not the agent of, nor were his acts those of, defendant; and that the facts did not warrant the inference that P. was authorized by S. to collect the money.

APPEAL from a judgment of the circuit court for Wood county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

Action to require the defendant to satisfy a mortgage. The issues raised by the pleadings were decided by the trial court substantially as follows:

On January 4, 1893, Casper Schafer and wife borrowed of defendant $550, agreeing to repay the same in five years, and to pay interest annually at the rate of seven per cent. per annum, and to secure such payment the debtors gave defendant their negotiable promissory note and a real-estate mortgage, which was duly recorded and is set forth in the complaint.

It was provided in the mortgage that in case of the non-payment of any sum of money when due, either principal, interest, or taxes, the entire debt should, at the option of the mortgagee, his representatives or assigns, be deemed to have become due and immediatedly collectible in a suit at law or by foreclosure of the mortgage.

When the mortgage was executed defendant resided, and has ever since resided, in the state of New York. During a period commencing prior to 1892 and extending to 1896, defendant furnished to one A. L. Smith, who resided in Appleton, Wisconsin, various sums of money to be loaned by the latter in his discretion, said money being the property of an estate of which defendant was trustee. It was agreed between defendant and Smith that the latter should repay to defendant all sums advanced to him to be loaned, with interest thereon at the rate of six per cent. per annum. Smith was authorized to handle the loaning business as if it were his own, defendant knowing that his agent must necessarily employ others to assist him.

Smith's residence and place of business was at Appleton, Wisconsin, about 100 miles from the property covered by the mortgage mentioned in the complaint and from the residence of the mortgagors.

In 1892 the Marshfield Land Company, with B. W. Pulling as manager, was engaged in loaning money and obtaining loans for other persons, with its place of business at Marshfield, Wood county, Wisconsin. Subsequent to 1892 Pulling succeeded to such business, and thereafter all loaning business done by defendant, and by Smith for him, in the counties tributary, in a business sense, to Marshfield, was carried on through Pulling.

Smith and Pulling made a joint agreement in regard to loaning defendant's money, to the effect that both should receive a percentage therefrom, and that Pulling should make collection and remit to Smith; and if collection of

interest at maturity could not be made in any case, Pulling should advance the same to Smith in order that he might advance the same to defendant.

The money received by Schafer and wife was paid them by Pulling, the note and mortgage was received by Pulling, the mortgage was recorded by him, and all the papers relating to the loan were then by him transmitted to Smith at Appleton, and by Smith were transmitted to defendant.

Prior to 1896, under the arrangements mentioned, money controlled by defendant was loaned to the amount of some $60,000, the loans being several hundred in number. Payments of interest and principal upon loans were made to Pulling from time to time, such payments being generally duly remitted to Smith. Schafer at no time received any notice that Pulling was not authorized to receive payments of interest or principal on the money borrowed by him. On the contrary, Pulling was by letter directed by Smith, in January, 1894, to collect overdue interest of Schafer. Eight dollars and fifty cents of the first instalment of interest due on the Schafer loan was in fact paid to Pulling.

In April, 1894, Pulling caused foreclosure proceedings to be commenced on the Schafer mortgage for nonpayment of the first instalment of interest on the mortgage debt, the defendant being named as plaintiff in the action, and thereafter, on May 17, 1894, Schafer sold the mortgaged premises to plaintiff, at which time the full amount of the mortgage debt, to wit, $595.35, was paid to Pulling. When such payment was made Pulling did not have in his possession the note and mortgage, but agreed to procure the same, with a satisfaction of the mortgage, and make delivery thereof to Schafer; but such promise was not kept. Pulling gave to Schafer the receipt of his land company for the money received as aforesaid, which receipt was accepted by Schafer in the belief that Pulling was authorized by the owner of the note and mortgage to receive payment thereof.

About the time the foreclosure proceedings aforesaid were commenced, Pulling caused other foreclosure proceedings to be instituted in the name of defendant to enforce mortgages owned by him, and subsequent thereto continued to conduct business in that way, some of which foreclosure proceedings were settled, and some prosecuted to judgment and sale, the lands being bid in in the name of *Daniel Beach*, trustee. In all of the foreclosure proceedings aforesaid the complaints were verified by Pulling as agent for the defendant. Smith had knowledge of the business transactions of Pulling in relation to the foreclosure of mortgages, and authorized the same.

Upon such facts the court concluded as matter of law that Smith had authority to employ Pulling and the Marshfield Land Company to assist him in making loans; that he exercised such authority; that Pulling was, at the time he received the money from Schafer, the agent of defendant by the authority of Smith, and that such payment was in effect payment to defendant and extinguished the mortgage in question, and that plaintiff was entitled to judgment accordingly. Judgment was duly entered in accordance with such conclusions, from which defendant appealed.

*Lyman E. Barnes*, for the appellant.

*George L. Williams*, for the respondent.

MARSHALL, J. The decision in this case is not grounded on any estoppel of defendant by his conduct, and the conduct of others for which he was responsible, to deny the authority of Pulling to receive payment of the mortgage debt; and there is no evidence in the record to sustain any such theory. Whatever was the customary way of conducting the business prior to the making of the loan to Schafer, between defendant and Smith and between Smith and Pulling or the Marshfield Land Company, or the way in which business was conducted between the parties thereafter, it is not

·claimed, and there is not a word of evidence tending defi-
nitely to show, that Schafer knew anything about it or that
he was influenced by any appearance of authority on the
part of Pulling, other than the circumstance that he borrowed
the money through Pulling and the latter had assumed the
right to collect interest and to cause an action of foreclosure
to be commenced for nonpayment thereof.

The customary and indispensable evidence of apparent
authority, as was held in *Bartel v. Brown*, 104 Wis. 493,—
possession of the note,— Pulling did not have, as Schafer
well knew when he parted with the money.   The note and
mortgage, and all the papers relating thereto, were in the
possession of appellant at New York.   Schafer parted with
his money upon the mere receipt of Pulling, executed in the
name of his land company.   The receipt does not purport
to be given for appellant, and there was no pretense by Pull-
ing that he was acting by authority, except what was infer-
able from the fact that he assumed to act in the matter. As
was well said in *Joy v. Vance*, 104 Mich. 97, if Schafer had
been as careful to ascertain the authority of Pulling as ap-
pellant was to guard his interest by keeping possession of
the papers relating to the loan, no one would have suffered
by Pulling's dishonesty.

*Bartel v. Brown* rules this case in this respect: The note
not being in Pulling's possession when he received the money,
such receipt was not in fact a payment to appellant unless
Pulling had actual authority to represent the appellant in
the transaction.   The question of what is requisite to apparent
authority in such cases received careful consideration in the
*Bartel Case*, and the decision is in line with the great weight
of judicial and text-book authority.   The principle there
declared must be considered as too firmly established to be
open to reconsideration.   In addition to the authorities cited
in the *Bartel Case*, the following are directly in point: *Il-
genfritz v. Mutual B. L. Ins. Co.* 81 Fed. Rep. 27; *Mutual*

*B. L. Ins. Co. v. Miles*, 81 Fed. Rep. 32; *Cummings v. Hurd*, 49 Mo. App. 139; *Murphy v. Barnard*, 162 Mass. 72; *Johnston v. Milwaukee & W. I. Co.* 46 Neb. 480; *Joy v. Vance, supra; Trowbridge v. Ross*, 105 Mich. 598; *Wilson v. Campbell*, 110 Mich. 580; *Church Asso. v. Walton*, 114 Mich. 677; *Bacon v. Pomeroy*, 118 Mich. 145; *Dexter v. Morrow*, 76 Minn. 413; *Hollinshead v. John Stuart & Co.* (N. Dak.), 77 N. W. Rep. 89; Randolph, Comm. Paper, § 1450, and cases cited.

There is very little conflict in the evidence, and it is not contended, as we understand it, but that the facts were correctly found by the trial court so far as the findings are confined.to what was said and done by the parties. From such occurrences and the nature of the business Smith was employed to transact for defendant, the trial court found by inference, as a fact, that Smith was given authority by appellant to employ Pulling to transact the business done by him, including that with Schafer; and further concluded from the facts as a matter of law, that Pulling was the appellant's agent and that his acts were the acts of appellant. That, as we understand the trial court, is on the theory that the facts found indicate that Pulling was a general agent of defendant and as such was authorized to receive payment from Schafer, such act being within the scope of the general employment. The contest on this appeal is on the points indicated.

We are unable to agree with the trial court's conclusion that the nature of appellant's relations with Smith required the latter to employ assistants and delegate to them authority to perform the important branch of the business of the agency of collecting and remitting money. True, an agent may employ others to assist him in the purely ministerial and unimportant details of his employment, but not to do the essentials of the agency, involving the skill, intelligence, responsibility, and judgment that is at the very bottom

of the employment.    The special confidence reposed in the
agent as to such matters precludes him from delegating his
trust to others, except upon some express understanding with
his principal.    Mechem, Agency, sec. 185, and cases cited.

The doctrine is familiar that if a person be intrusted with
a note for collection, and the debtor resides so far from the
place of business of such person that he cannot conveniently
reach such debtor so as to properly and promptly perform
the service, authority will be implied that such person may
forward the note to a collector within convenient reach of
the debtor and perform the service through such collector.
That is within the general rule that authority to an agent
to do an act includes authority to use the usual and neces-
sary means to effect the purposes of the agency.

If Smith had authority in this case to collect the note
from Schafer, the fact that he did not have possession of
the security effectually, *prima facie*, rebuts the theory that
he had authority to transfer his trust to Pulling, because
such possession and ability to transfer it to Pulling was in-
dispensable to enable Smith to clothe Pulling with appar-
ent authority to act in the matter and to enforce collection
of the debt, if Schafer were to stand upon his rights or even
act as a reasonably careful person should.

Having come to the conclusion that the facts found, from
which the trial court inferred authority in Smith to employ
Pulling, do not lead to such inference, consistent with legal
principles, we might decline to go further.    However, we
have carefully considered the circumstances found by the
court, and come to the conclusion, in the light of the law
applicable thereto, that they do not warrant the inference
that Pulling was authorized by Smith to collect the money
from Schafer.    We cannot say the relations between Smith
and Pulling, and the manner in which they conducted busi-
ness, were sufficient to prevent Smith from denying Pull-
ing's authority under the doctrine of estoppel, because there

is no finding that Schafer knew of such relation and course
of business, neither is there any evidence to that effect, as
before indicated. We cannot say that Pulling had implied
authority to collect the money from Schafer, because he did
not have possession of the note and mortgage. We cannot
say that the facts found implied express or actual authority
to Pulling to collect the money from Schafer, because such
a conclusion, against a person who exercises the precaution
to protect himself from fraud or loss by keeping possession
of his securities, in favor of another who claims to have ex-
tinguished them by payment to such person's agent, within
the great weight of, if not universal, authority, requires
strong and convincing evidence,— much stronger evidence
than the circumstances found to exist in this case. A re-
view of a few of the cases already cited will demonstrate
the correctness of what is here said.

In *Murphy v. Barnard*, 162 Mass. 72, cited by appellant's
counsel, the mortgagee, a lawyer, having assigned the note
and mortgage, by consent of the assignee was allowed to re-
tain possession thereof for the purpose of collecting the inter-
est as it should fall due. Thereafter the mortgagor, in igno-
rance of the assignment, and without knowing of, hence with-
out relying upon, the mortgagee's custody of the securities,
and at a place other than the mortgagee's office where the
papers were kept, made payments to the mortgagee to apply
on the principal of the debt, which payments the mortgagee
embezzled. It was held that, regardless of the hardship to the
mortgagor, the stringent rules governing the handling of ne-
gotiable paper required the court to hold that the mortgagor,
in making the payment to the mortgagee on the mere as-
sumption that he was the owner of the note, because of want
of knowledge of the assignment, did not preclude the true
owner of the securities from enforcing full payment of the
debt.

In *Bromley v. Lathrop*, 105 Mich. 492, the assignor of a

Kohl vs. Beach.

mortgage, who was engaged in loaning money on real estate
and subsequent to the assignment associated others with him
in carrying on the same business under the corporate name
of the Michigan Mortgage Company, collected the semi-an-
nual instalments of interest on the mortgage debt for about
nine years, once in the meantime arranging an extension of
the time of payment of the principal, and sent such collec-
tions, as made, to the assignee upon receipt of the interest
coupons.   The mortgagor did not know of the assignment
of the mortgage, and the assignee did not know that the
assignor and his successor assumed to the mortgagor to have
any authority other than to receive the interest payments
and to remit the same upon receipt of the coupons.   At the
maturity of the debt, the securities being in the hands of
the assignee, the mortgage company demanded payment of
the note of the debtor, whereupon he paid the same, sup-
posing from the manner in which the business had been
conducted for years that it was the true owner of the debt
or had authority to collect it.   The court held that there
was no ground for a conclusion that the assignee of the
mortgage gave to the mortgage company either general or
special authority to receive the money for him.

In *Church Asso. v. Walton*, 114 Mich. 677, the Michigan
Mortgage Company was again the mischief-maker. A long
correspondence between one Bissell and the mortgage com-
pany was received in evidence, very much the same as in
this case, showing that Bissell, as agent, made a large num-
ber of mortgage loans through the mortgage company, the
business covering a considerable period of time, and that
the company made all collections of interest on and principal
of the loans, and remitted the same to Bissell as such in-
terest and principal became due; that the company received
express directions from Bissell, from time to time, or the
papers were sent to it for delivery on payment of the money.
The mortgage company collected the interest on the loan in

question as occasion required, and in the end collected the
principal without any express directions to do so, assuming
to have general charge of the Bissell loans, and without
having possession of the note and mortgage. The mort-
gagor made the payment, in ignorance that the mortgage
and the debt secured thereby had been assigned, supposing
that the mortgage company was the owner thereof. The
court held that such facts did not establish a general agency
in the mortgage company to collect the principal of the Bis-
sell loans or of the one in question.

The case before us, like those above referred to, and many
more that might be cited, is one of great hardship to re-
spondent and his vendor. If there were a way by which
they could be protected, consistently with established legal
principles, the court would gladly do so. It is plain that
one of two parties must suffer from the dishonesty of Pull-
ing. The court cannot determine which one must bear the
burden by the standard of which can best bear the loss, but
must be guided by the law governing such situations. Ap-
pellant used the precaution to keep possession of his securi-
ties, the indispensable evidence of implied authority to col-
lect the mortgage debt. No express direction was given to
Pulling, by any one, to make the collection, and he had no
general authority covering the subject. There is certainly
no definite evidence that he was in the habit of collecting
the principal of appellant's loans without express direction
to do so, or possession of the securities. He did not, by any-
thing he said or did at the time the payment was made by
Schafer, indicate to him that he was acting under the di-
rections of appellant or Smith. He was responsible to Smith
for the payment of interest on the debt, and his closing up
of the transactions with Schafer, upon default being made
in the first instalment of interest, without the option to de-
clare the principal of the debt due being exercised by the
owner, indicates that he was acting to save himself rather

to save Smith or appellant, or to perform an authorized service for them or either of them. His position enabled him to impose on Schafer by obtaining the latter's money without a surrender of the note and mortgage, simply because Schafer neglected to insist on such surrender before making the payment. The penalty of such negligence must rest upon the one who was at fault. The misfortune cannot be shifted to appellant, who rightfully relied on the possession of his securities for collection.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to render judgment dismissing the complaint, with costs.