LOIZEAUX, Appellant, vs. FREMDER, Respondent.

*October 20—November 15, 1904.*

*Mortgages: Promissory notes: Assignment: Payments to assignor: Estoppel: Negligence: Married women: Separate estate: Contracts.*

1. In an action to foreclose a mortgage, the negotiability of the note accompanying the same considered, and *Thorp v. Mindeman, ante,* p. 149, followed.
2. A debtor must pay a negotiable instrument to the person who owns it at the time of payment, or to an agent of such owner

actually authorized to receive payment. No payment to any other person can be effective unless made in reliance upon actual possession of the note, or upon words or acts of the owner so unambiguously declaring the authority of such other person to receive such particular payment, as to estop the owner from denying such authority.

3. Possession of a negotiable instrument is generally the sole adequate evidence of *apparent* authority to collect upon which the debtor can, without negligence, rely.

4. Plaintiff, assignee of a negotiable note secured by mortgage, continuously retained the instruments in her possession, but from time to time delivered to the original mortgagee the interest coupons. The assignment was never recorded, and the mortgagor continued to pay the interest to the mortgagee, and, after an extension of time of payment, also paid part of the principal to him. In the transaction of extension of payment plaintiff knew that the mortgagee assumed to act for her, but failed to protest her ownership to the mortgagor. All these transactions were without knowledge by mortgagor of any facts warranting the belief that 'the note had been transferred, and were upon the supposition that the original mortgagee still owned it. The interest payments were regularly remitted to plaintiff, but the payments of principal were converted by the mortgagee, who absconded, insolvent. Plaintiff brought action of foreclosure for the full amount, to which defense of such payments of principal was set up. *Held:*

    (1) Such payments were not binding on the plaintiff.

    (2) Even if plaintiff's silence at the time payment was extended might have confirmed the mortgagor in the belief that the mortgagee then owned the securities, she was not estopped to deny such ownership at any subsequent time.

5. Estoppel arises only when a person may reasonably anticipate a change of position by another in reliance on the former's act, and the former is not required to anticipate negligence or ignorance of the law in others.

6. A married woman joined with her husband in a negotiable note secured by mortgage, in part on her separate estate, and in part on that of her husband, the money promised to be repaid being borrowed for and used by the husband in his business. *Held*, on foreclosure of the mortgage, that plaintiff was not entitled to a personal judgment against the wife for any deficiency that might arise upon a sale of the mortgaged premises.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

On August 19, 1898, John Fremder, husband of the respondent, borrowed of Henry Herman $4,000 for use in his business of a boot and shoe dealer, of which no part came to the private use of the respondent or was for the benefit of her separate property. On the same date the husband and wife executed a note in the same form as that described in *Thorp v. Mindeman, ante,* p. 149, 101 N. W. 417, payable in three years, with six per cent. semiannual interest, and also executed a single mortgage upon two parcels of real estate, one of which belonged to the respondent and the other to her husband; said mortgage being in substantially the same form as that described in the above-mentioned case, which was duly recorded. On September 6, 1898, the note and mortgage were transferred to this plaintiff under her then name of Sanderson, and to her sister, Sarah Sanderson, who, on April 16, 1903, assigned her interest to the plaintiff. Neither of said assignments was recorded until about April, 1903. Continuously subsequent to the first transfer of said note and mortgage the papers remained in the possession of the assignees, and were never in the possession of Henry Herman. The mortgagors paid interest regularly to Henry Herman, receiving from him the interest coupons which had been attached to the note. On August 19, 1901—being the original maturity of the note—the mortgagors signed an extension agreement for an additional three years, which recited the extension as a consideration, and made no reference to the ownership, except it declared that the mortgagors, John and *Augusta Fremder,* agreed "to and with Herman to pay interest thereon at the rate of five per cent. thenceforth." Additional interest coupons were affixed to this extension agreement, which was, shortly after its execution, delivered to the plaintiff, and retained by her. Interest continued to be paid as before until February 18, 1902, when the defendant, her husband having died, paid to Herman $2,200 to apply upon the principal, and on the 11th day of April, 1902, made an additional payment

of $900. These payments were made with no knowledge of any facts warranting the belief that the note had been transferred, and upon the supposition that Herman still owned them. They were receipted for by Herman, but, unlike the previous interest, were not paid over to the owners of the mortgage, to whom thereafter he periodically remitted interest on the whole amount of the mortgage, receiving from the defendant merely the interest on the remaining balance of $900. Later—but at what date is not disclosed—the defendant desired to pay the remaining $900, and demanded delivery of the note and mortgage, whereupon she was informed by Herman that he would have to get them from a man in New York. She thereupon refused to pay until the papers were ready for delivery. Some time early in 1903, at a date not definitely disclosed, Herman absconded, insolvent, whereupon plaintiff placed her assignment of this mortgage on record, and notified defendant to pay only to her. In August, 1903, upon the maturity of an instalment of interest, defendant tendered $22.50, the interest on $900, which plaintiff refused to accept, demanding $100 as the semiannual interest on $4,000. Thereupon suit was commenced to foreclose the mortgage; also praying for deficiency judgment against defendant, claiming full amount of $4,000 to be due. The findings are substantially in accord with the facts above stated, from which the superior court concluded, as appears by an opinion filed, that the note in question was nonnegotiable; that the defendant was without fault or negligence in paying to Herman on the supposition that he was the owner, and that plaintiff had estopped herself from denying Herman's ownership, and hence that no more than $900 was due; and that no default in payment of interest had occurred; whereupon he rendered judgment dismissing complaint, from which the plaintiff appeals.

For the appellant there was a brief by *Nath. Pereles & Sons,* and oral argument by *Charles S. Carter.*

*John Toohey,* for the respondent.

DODGE, J.   When one enjoying the confidence of the community in which he has acted as intermediary between investors and borrowers of money proves to have been both dishonest and insolvent, complications arise of the most serious character, in which the attempt to do justice must, of necessity, be painful to the courts; for, whatever the result, one party or the other—and often both—must suffer injury; sometimes ruin.   The strain upon the human sympathies is frequently such as to render difficult adherence to settled rules of law, which, in individual cases, may seem to cast the burden of the wrong on him who can least well bear it.   Such rules, however, become established upon many and varied considerations as likely, in the long run, to approximate most nearly to justice, and to minimize the wrong as far as possible, and must be applied by a court until, if the desired results are not obtained, the lawmaking power shall readjust them.   Within some six years past this court has confronted various entanglements arising out of two notable instances of abuse of confidence generically like that of Henry Herman now presented, and has, with much anxiety of research, ascertained and sought to clearly declare certain of the rules which must govern the rights of the sufferers.   We cannot forbear expression of our disappointment that counsel in this case have seemingly wholly failed to discover or avail themselves of those efforts in performance of their duty to aid both the trial court and this in administering justice.

Discussion of the negotiability of the note in suit may be dispensed with in this opinion, for that is considered and settled in *Thorp v. Mindeman, ante,* p. 149, 101 N. W. 417. Such negotiability being established, there results the rule that the debtor's duty is to pay to the person who owns the note at the time of payment, or to an agent of such owner actually authorized to receive payment; that no payment to any other person can be of any effect unless made in reliance upon the actual possession of the note, or upon words or acts of the owner so unambiguously declaring the authority of such other

person to receive such particular payment as to estop the owner from denying such authority. Possession of a negotiable instrument is generally the sole adequate evidence of *apparent* authority to collect upon which the debtor has any right to rely, or can, without negligence, do so. *Fred Miller B. Co. v. Manasse,* 99 Wis. 99, 74 N. W. 535; *Winkelmann v. Brickert,* 102 Wis. 50, 78 N. W. 164; *Bartel v. Brown,* 104 Wis. 493, 80 N. W. 801; *Kohl v. Beach,* 107 Wis. 409, 83 N. W. 657; *Spence v. Pieper,* 107 Wis. 453, 83 N. W. 660; *Boyle v. Lybrand,* 113 Wis. 79, 88 N. W. 904; *Joy v. Vance,* 104 Mich. 97, 62 N. W. 140; *Biggerstaff v. Marston,* 161 Mass. 101, 36 N. E. 785; *Hollinshead v. Stuart,* 8 N. D. 35, 77 N. W. 89. Of course, there may be subsequent ratification, of which, however, nothing is claimed in this case. *Platt v. Schmitt,* 117 Wis. 489, 94 N. W. 345. This rule has been held sufficient to deny efficacy to such acts as permitting collection of interest, or even prior instalments of principal, which, in relation to other business not involving collection of negotiable paper, might well suffice to establish apparent agency. Commercial paper has always been favored in the law, not less for the ultimate benefit of the giver than of the holder, and the rule just referred to is in line with that policy. It is so simple, and, once understood, furnishes so easy and sure a means for both debtor and owner to protect themselves against unauthorized acts of others, that it ought not to be weakened or confused. The holder can always be safe by retaining the instrument in his possession; the debtor, by refusing payment without actual presentation. It is justified in application to negotiable paper distinctively from other property by the very dominant purpose of easy and probable transfer at any moment, so that what may be true as to ownership of such paper on one day is likely to have changed on the next. Of the probability of such change the negotiability of the instrument is a continual warning.

The last consideration is conclusive against the estoppel

sought to be raised against plaintiff as a result of her failure to protest her ownership, when, in August, 1901, she gained knowledge that Herman, in taking the extension agreement, had, in effect, assumed to act as the owner of the note and mortgage. Conceding for the moment that her silence might have confirmed defendant in the belief that Herman then owned the security, no estoppel could result to deny his ownership at any subsequent time, for the debtors had no right to assume that ownership of a negotiable note would continue; nor, as shown by the above authorities, could they, without negligence, act on such assumption. Estoppel arises only when a person may reasonably anticipate, or, as is sometimes said, intends, a change of position by another in reliance on the former's act. *Kingman v. Graham,* 51 Wis. 232, 242, 248, 8 N. W. 181; *Two Rivers Mfg. Co. v. Day,* 102 Wis. 328, 332, 78 N. W. 440. One is not required to anticipate negligence nor ignorance of the law in others in so governing his conduct as not to mislead them to their hurt. Long prior to 1901 the law was well settled that one indebted on negotiable paper had no right to pay to any one not in possession of the instrument. Why, then, should the plaintiff anticipate that the debtor would forego that care? Certainly not. She exercised the very precaution against any collection of principal which. the law required, by retaining possession of the principal note while she put Herman in position to bind her in receiving interest by delivering into his custody the coupons as they matured. Further, the conduct of defendant strongly negatives reliance by her on any mere silence of plaintiff, for when she came to make final payment she demanded presentation of the note, and, in its absence, refused payment. Had she exercised that same care on the other occasions which she herself deemed proper on the last, she would have been safe.

We can find nothing to remove this case from the carefully considered rule of the above authorities, nor to avoid the con-

clusion that between these two innocent persons the negligence of defendant in paying to one not having possession is so responsible for the loss that it cannot be imposed on the plaintiff, who at all times guarded against such result by keeping the note in her own possession. It is the former, and not the latter, who trusted Herman so as to enable him to do the wrong.

The conclusion thus reached in favor of the plaintiff's right to maintain action of foreclosure necessitates consideration of the very slightly argued question as to the personal liability of this defendant. It will be observed that upon the undisputed evidence and the findings the money promised to be repaid by the note was borrowed, to the knowledge of all parties, for the use of defendant's husband in his own business. It was not borrowed by her, and did not in any respect come to her private or separate use, nor was it borrowed with any purpose or understanding that it was to be used with reference to her separate estate, nor was it so used. While, of course, under her statutory power to contract with reference to her separate estate, she could make a perfectly valid mortgage thereon to secure this or any other debt, she could not bind herself to a legal liability by the mere promise to pay. *Gaynor v. Blewett,* 86 Wis. 399, 57 N. W. 44; *Hollister v. Bell,* 107 Wis. 198, 83 N. W. 297; *Slack v. Padden,* 111 Wis. 42, 86 N. W. 568; *Ritter v. Bruss,* 116 Wis. 55, 92 N. W. 361. The conclusion, therefore, is irresistible that she is under no such liability for the indebtedness represented by this note, and the plaintiff is not entitled to any personal judgment against her for any deficiency that may arise upon a sale of the mortgaged premises.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the plaintiff in accordance with law.