, Bautz, Appellant, vs. Adams and others, Respondents.

*February 22—March 19, 1907.*

(1–5) *Mortgages: Unrecorded assignment: Payment to and discharge by record owner: Possession of securities: Agency to receive payment: Evidence.* (6–8) *Appeal: Presumption against error: Construction of ambiguous finding: Facts not found.*

1. A person who deals with land by taking a mortgage or deed thereof is protected by the recording act as to a prior mortgage on the property which has been improperly discharged by the record owner, but not the real owner, of the security, such person not having notice of the assignment of such prior mortgage.

2. A debtor upon commercial paper whose obligation is secured by a mortgage on real estate owned by him is not protected by the recording act in paying the mortgage indebtedness to the record, but not the real, owner of the mortgage and taking a release thereof, such record owner not having possession of the security nor actual authority from the real owner to act as the latter's agent in the transaction.

3. Agency to receive payment of money due upon commercial paper secured by mortgage or otherwise can only be implied from possession, by the one assuming to have authority in the matter, of the securities and capacity to deliver the same upon payment being made.

4. Actual authority of a person, not the owner or possessor of a note and mortgage, to receive payment of the indebtedness is essential, in order for such payment to extinguish the security.

5. The actual authority above mentioned need not be expressed in writing or established by direct evidence. It may be established by circumstances showing with reasonable certainty its existence.

6. On appeal, in testing the sufficiency of a record to support a judgment, as a rule, the presumptions are against error, and such only are to be considered as appear with reasonable clearness.

7. If a finding by a trial court which is vital to a judgment is ambiguous, that one of two reasonable probable meanings which will support, is to be preferred over one that will defeat, it.

8. If a fact, essential to a judgment rendered in an equity case, does not appear to have been found by the trial court, but it appears from the record with reasonable certainty to exist, it may be found on appeal and judgment be rendered or directed accordingly.

      [Syllabus by Marshall, J.]

Bautz v. Adams, 131 Wis. 152.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action to foreclose a mortgage. An answer was interposed pleading, among other things, payment of the mortgage indebtedness and discharge of the mortgage. The issues of fact were thus decided:

(1) December 5, 1891, *Mary M. Adams* gave Wilhelm Woldt her promissory note for $1,350, due in four years, with interest at the rate of six and one-half per cent. per annum, payable semi-annually, securing payment thereon by the mortgage mentioned in the complaint. (2) At the time of the aforesaid transaction one C. W. Milbrath by a power of attorney duly recorded was the attorney in fact for said Wilhelm Woldt. (3) January 17, 1892, by virtue of such power of attorney said Milbrath, by an instrument duly executed and recorded, assigned said mortgage and note for value to the plaintiff, who continued in possession thereof up to the date of the trial. (4) The assignment was not recorded until the 30th day of August, 1905. (5) April 2, 1892, the mortgagor conveyed the mortgaged premises to said Milbrath, the conveyance being duly recorded April 15, 1892. May 5, 1904, said Milbrath conveyed said premises to one Gustav C. Mueller, the deed being duly recorded June 3, 1904. March 4, 1905, said Mueller conveyed the premises to George M. Hinkley by warranty deed, which was duly recorded March 13, 1905. (6) Said Hinkley purchased the premises subject to said mortgage and note December 5, 1905, and was furnished with an abstract showing such mortgage to be outstanding in the name of Wilhelm Woldt. He was informed that said Milbrath, acting under the aforesaid power of attorney, had full power to receive payment of the principal of and interest on said note and to satisfy and discharge the mortgage. (7) April 6, 1905, said Hinkley paid said Milbrath, as attorney for said Woldt, $1,362.50 by his personal check, which was the whole amount due, said Milbrath, as such attorney,

making and delivering to said Hinkley a satisfaction and discharge of said mortgage, which was duly recorded in the office of the register of deeds April 7, 1905. (8) At the time of such payment said Hinkley had no knowledge of any assignment of said mortgage or that plaintiff had any interest therein, and acted in good faith. (9) Plaintiff was the owner and holder of the note and mortgage and permitted said Milbrath to represent himself as authorized to receive payment of the note and satisfy the mortgage. Said Milbrath and the C. W. Milbrath Company, of which he was president, had for many years acted as agent of plaintiff in loaning money upon notes and mortgages and in receiving payments thereon. The amount due on the note and mortgage in question was placed to the credit of plaintiff on the books of the Milbrath Company, but he received no money nor knew of the fact.

Upon such findings the court held that the mortgage was extinguished, and that the defendants, executors of the last will and testament of George M. Hinkley, were entitled to judgment dismissing the complaint with costs. Judgment was accordingly rendered, from which plaintiff appealed.

For the appellant there was a brief by *James T. Drought,* attorney, and *Lawrence A. Olwell,* of counsel, and oral argument by *Mr. Drought.*

*Edgar L. Wood,* for the respondents.

MARSHALL, J. So far as the findings are concerned, to the effect that Hinkley paid the mortgage indebtedness to C. W. Milbrath on the faith of the mortgage appearing of record in the name of Wilhelm Woldt and a power of attorney thus appearing authorizing Milbrath to loan money upon mortgages and to release, satisfy, or assign all notes and mortgages owned by Woldt and to collect all rents and lease, sell, and convey all real estate and personal property and to perform other acts for and in the name of said Woldt, whether they are open to successful attack as contrary to the clear pre-

ponderance of the evidence is not deemed material. Therefore, we will not follow in detail the argument of counsel for appellant on that branch of the case.

The evidence is undisputed that the official records, at the time Hinkley paid the money to Milbrath, showed that the mortgage was outstanding in the name of Woldt and that C. W. Milbrath was his attorney to do the things heretofore mentioned. It is also undisputed that interest on the note, as the same became due, was for many years paid to Milbrath and by him paid to the one entitled thereto on production of the paper, and that Hinkley and his agent, supposing from the state of the record that Milbrath possessed authority to receive payment of the principal of the note and to discharge the mortgage, made such payment and received a release of the mortgage, as stated in the findings. Whether Hinkley was warranted in relying on the record, as he did, is the first question to be determined.

Counsel for respondents in support of the affirmative of the proposition stated cite *Marling v. Nommensen,* 127 Wis. 363, 106 N. W. 844; *Friend v. Yahr,* 126 Wis. 291, 104 N. W. 997; and *Mason v. Beach,* 55 Wis. 607, 13 N. W. 884. A brief analysis thereof will suffice to show that they do not apply to the situation before us.

In *Mason v. Beach,* the discharge of the mortgage was made by the plaintiff pending foreclosure thereof after he had transferred his interest to another who concealed the transaction. The court held that, under the statute permitting an action after the transfer of the plaintiff's interest to be continued in his name or in the name of the assignee, in case no substitution is made, as to persons having no notice of the transfer, the plaintiff is to be regarded as possessing authority to deal with the subject of the litigation as owner thereof. No comment is necessary to show that such doctrine does not rule this case.

In *Friend v. Yahr,* the plaintiff dealt with the real estate

by taking an assignment of a mortgage thereon and a note secured thereby, relying on a release of a prior mortgage by the person having title thereto of record. On that branch of the case the question of whether one is warranted in paying a mortgage indebtedness to the record owner relying wholly on the record, the securities not being in possession of such owner, was not involved. The precise point decided is indicated by the following language used in the opinion:

"A person taking a mortgage from the payee will not be held chargeable with notice that the notes secured in the first mortgage have been assigned, but he may rely upon the recòrd, as showing title in his mortgagor."

On the question of whether the mortgage discharged was extinguished as between the owner thereof and the payor the case turned on whether the record, but not the real, owner who made the release had possession of the securities with authority to collect the indebtedness at the time payment was made.

In *Marling v. Nommensen,* the person claiming that effect should be given to a release of a mortgage by the record owner dealt with the real estate by purchasing the same on the faith of such release. That involved the question decided in the first branch of *Friend v. Yahr.* The mortgage indebtedness had been paid to such record owner after he had assigned the note and mortgage and parted with possession thereof to another, who failed to record his assignment, as in this case. These contentions were made: first, the debt secured by the mortgage is paid and the mortgage therefore extinguished; second, the defendant is entitled to protection by the recording act in dealing with the realty, as he did, in the belief that the release of the mortgage was duly authorized. The court said as to the first proposition it "is fully negatived by our former decisions. The maker of a negotiable promissory note can satisfy it only by payment to the owner at the time or to such owner's authorized agent. If the recipient of the money

is not actually authorized the payment is ineffectual unless induced by unambiguous direction from the owner or justified by actual possession of the note." Citing *Bartel v. Brown,* 104 Wis. 493, 80 N. W. 801; *Kohl v. Beach,* 107 Wis. 409, 83 N. W. 657; *Loizeaux v. Fremder,* 123 Wis. 193, 101 N. W. 423. On the second point the court held that the assignee of the mortgage by allowing the assignor to appear of record as owner was estopped from claiming want of authority of the latter to discharge the mortgage as to the person who purchased the land on the faith of such discharge. Thus a clear distinction was drawn between the status of one as regards the owner, under an unrecorded assignment, of a mortgage on his land, who has paid the mortgage indebtedness to the record owner of such mortgage and obtained a release from him, and his status as regards a person who, relying upon the record of such a release, has dealt with the land by taking a mortgage thereon or deed thereof.

From the foregoing it seems plain that Hinkley was inexcusably negligent in paying the mortgage indebtedness to Milbrath, relying for the latter's authority solely on the condition of the record as regards the ownership of the securities and the authority of Milbrath. If the payment had been made to the record owner himself after he parted with the title and possession of the securities it would not, as we have seen, have worked any prejudice to the appellant as regards the maker of the note or person liable for the indebtedness. Payment of the indebtedness to be efficient to extinguish the mortgage could only be made to the owner of the securities or his authorized agent, and authority of the agent could not be implied except from possession by him of the securities. In *Bartel v. Brown, supra,* the court thus declared the law to be:

"The importance of protecting the holders of commercial paper is so great that to warrant finding that a person who assumes to have authority to receive payment of the principal

sum on any such paper, has such authority, possession of the paper itself by such person, or proof *aliunde* of express authority, is indispensable. . . . If money be due on a written security, it is the duty of the debtor to see that the person to whom he pays it is in possession of the security. . . . The payor is negligent if he relies on anything less, and must abide the event of being able to establish, by clear and satisfactory evidence, an express agreement between the holder of the security and the supposed agent, authorizing the latter to represent the former in the transaction."

So it will be seen that implied authority of Milbrath to receive the money from Hinkley for the owner of the note and mortgage could be based only on possession by him of the securities and capacity to deliver the same upon payment being made. It being conceded that he did not have such possession, payment to him did not affect the right of appellant, as to the payor, unless the appellant expressly authorized Milbrath to receive the money for him.

Whether the learned trial court grounded the judgment wholly on the theory that Hinkley was, by the recording act, warranted in treating Woldt as owner of the securities and Milbrath as entitled to represent him does not appear with absolute clearness. After finding in detail all the facts bearing on that phase of the case the court found that plaintiff permitted Milbrath to represent himself as having authority to do what he did, and that he and his company had for many years acted as plaintiff's agent in loaning money upon notes and mortgages and receiving payment of principal and interest thereon, a regular account being kept between them of the transactions, and that payment was received from Hinkley by Milbrath and credited by him to appellant on his company's books, but without appellant's knowledge. If that means no more than that appellant permitted Milbrath to represent himself as authorized to do what was done because of neglect to put the assignment on record, it is immaterial, as we have seen. The finding is somewhat ambiguous, as we read it.

If as a whole it means that Milbrath was expressly permitted by appellant to receive money, principal or interest, as the same became due on notes and mortgages obtained by the latter through the former's agency, including the one in suit, and to pay the money over to appellant upon production of the securities, then the judgment complained of is right, if there is evidence warranting the finding.

The presumptions are rather against the existence of error than in favor thereof. *Edwards v. Smith,* 48 Wis. 254, 3 N. W. 758; *Heer v. Warren-Scharf A. P. Co.* 118 Wis. 57, 64, 94 N. W. 789. Error must clearly appear to be efficient to disturb the decision of a trial court. So we should approach the consideration of such a question as that in hand from the viewpoint that the leaning should be towards supporting rather than defeating the judgment, while not hesitating to do the latter for prejudicial error efficiently appearing.

In construing an ambiguous finding the same rule should prevail as in the construction of a contract or a law. That one of two or more reasonable probable meanings of the language used should be adopted which will make the same material and will support the judgment rather than one which will defeat it, and in solving the matter resort should be had to the evidence dealt with by the finding.

Here, as before indicated, all facts relating to the record and the question of whether the situation in that regard gave Hinkley good ground to make the payment to Milbrath as agent of Woldt, were covered before reaching the finding in question. There was left to be considered the evidence tending to show that Milbrath was authorized by appellant to act for him in receiving payment of the mortgage indebtedness. Now the indications are pretty strong that the court did not intend to go any further by the finding under discussion than to decide that appellant held Milbrath out as having authority to do what he did. Whether the language used would admit, reasonably, of a different construction un-

der the rules before stated we have concluded to resolve in the negative, since counsel for respondent freely concedes that "no finding was made by the court below as to the authority to collect the principal upon this mortgage so as to constitute a payment of the debt." Whether such authority existed or not was really the turning question in the case and should have been passed upon. Possibly the learned court intended to do so by the language of the ninth finding.

It is contended that authority in fact for Milbrath to receive the money from Hinkley for appellant was shown by the evidence. So we should examine the record and determine, under the established practice, whether the case can be finally disposed of upon the appeal even if the vital question was not passed upon below. In such situation if the record discloses with reasonable and satisfactory certainty a preponderance of evidence in favor of the existence of the fact essential to support the judgment it may be found here accordingly and the litigation terminated the same as if there were a finding on the point by the trial court. *Brown v. Griswold*, 109 Wis. 275, 280, 85 N. W. 363.

While express authority from appellant to Milbrath to receive the money from Hinkley is essential to defeat the former's claim it is not necessary that such authority should appear in writing or be established by direct evidence. There is evidence undisputed to the effect that appellant obtained several notes and mortgages from Milbrath or his company besides the one in question and that in all such cases both the principal and interest had customarily been paid to Milbrath or said company as collector for appellant and the money then paid over to him when he called therefor and produced his papers. The evidence is also all one way that interest on the note in suit was, during a period of over ten years, collected and paid over in that way and that business between Milbrath and his company and the appellant was carried on in such way for some twelve or fifteen years. Milbrath testified substan-

tially as follows: I do not remember that I ever had authority from *Bautz* to collect principal. There was never anything said about it. I do not think we had any understanding about the collection of the principal upon his mortgages. No talk of any specific authority that I remember. The company had an account with *Bautz* on its books. It will be seen that Milbrath failed to deny, directly, that he and his company did have authority, generally, from *Bautz* to collect the principal on his mortgages as had been done from time to time. *Bautz* testified that he thought Milbrath or his company collected several mortgages for him; that he did not tell them to do so, but closed the subject by saying, when a mortgage was due and the parties wanted to pay, I expected Mr. Milbrath would receive the money for me. All those that were paid that I know of he did receive the money and handed it over to me. I always had the notes and mortgages in my possession. In addition there is the significant circumstance that Milbrath in the particular transaction and, apparently, in all the others, was designedly left to appear as the proper person to discharge the mortgages upon the indebtedness being paid, and it fairly appears that, in general, when the principal of a mortgage was paid all appellant did in the matter was to deliver his papers to Milbrath, leaving the latter to clear the record and to transmit such papers to the persons entitled thereto. Such evidence, circumstantial and direct, points so strongly to the existence of actual authority in Milbrath to receive the money from Hinkley as appellant's agent that a finding to that effect certainly could not be disturbed as against the clear preponderance of the evidence. We are constrained to hold, without further discussing the evidence in detail, that it clearly and satisfactorily preponderates in favor of the theory that *Bautz* expected, when any one desired to pay off any mortgage he had obtained from Milbrath or his company, that the money would be received as it was in the instance in question and that such expectation was based on

general authority, authority in fact, from him to so transact the business.

The result of the foregoing is that the mortgage in suit was extinguished by the payment made by Hinkley's agent to Milbrath, and that the judgment should be affirmed.

*By the Court.*—So ordered.