CITY BANK OF PORTAGE, Respondent, vs. PLANK, imp., Appellant.

*January 14—February 22, 1910.*

*Deeds: Validity: Grant to person not in existence: Ascertaining person intended:* Bona fide *purchaser: Reliance on record: Unrecorded mortgage: Payment: Foreclosure of mortgage: Judgment for deficiency.*

1. In general, a grant to a person not in existence is void; but where the parties to the transaction knew that the grantee named was dead, the inference is that by the use of that name they meant to designate some existing person or persons, and the court will inquire into the situation, the general design of the parties, and the equities between them, to ascertain who was intended.

2. Thus, in this case, by the use of the name of a decedent as grantee in a conveyance of land it was intended to designate the executor of his will and to pass the title to such executor in his capacity as such, charged with such trust as might be found necessary to protect all parties interested in the estate of the decedent; and the deed is given effect accordingly.

3. One who occupies the attitude of a purchaser of a clear title to land from a mortgagor, relying in good faith upon the registry records, and receiving, together with a full warranty deed from the vendor, a discharge of the mortgage by the record owner thereof, and placing the instruments upon record, will be protected as against an assignee of the mortgage whose assignment had not been recorded. The fact that, at the time of receiving such deed and discharge, the purchaser paid over to the supposed owner of the mortgage the money which was to satisfy it, does not show that he was discharging an obligation from himself to the payee, so as to bring him within the rule that a debtor whose debt is evidenced by a negotiable note, though secured by a recorded mortgage, has no right to rely on the records in paying such debt to other than the real creditor, his authorized agent, or one in actual possession of the note.

4. In a statutory foreclosure action, if the principal cause of action fails there can be no judgment for deficiency.

APPEAL from a judgment of the circuit court for Waushara county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

Action to foreclose a certain mortgage on the south one-half of the southwest quarter of section 21 in town 20 north, of range 8 east, in the county of Waushara, Wisconsin, dated October 1, 1904, for $3,000, executed by the defendants William Eachor and Flossie Eachor to defendant M. Plank and by him assigned on November 15, 1904, to the plaintiff to secure his promissory note of $1,500 dated October 15, 1904, upon which there was due the principal and interest from April 3, 1908. The plaintiff also prayed a cancellation of a discharge of that mortgage, which had been made by M. Plank and recorded on or about September 3, 1907, after its assignment but before the record thereof, which was June 29, 1908. It appeared and was found by the court that one E. D. Plank, the father of both M. Plank and *Edward S. Plank,* had, prior to all these transactions, made a will, by which, after certain legacies, he devised and bequeathed to the appellant, *Edward S. Plank,* all of a considerable residue of his estate, charged with the care and support of the mother, including therein

specifically a certain 200-acre farm belonging to E. D. Plank. On January 23, 1905, he sold that farm to M. Plank and received as consideration therefor a certain $3,000 mortgage executed by the same defendants, the Eachors, to M. Plank on certain 120 acres of land contiguous to the eighty acres included in plaintiff's mortgage, the whole being used together as a farm. The father, E. D. Plank, died, and his will was admitted to probate in September, 1906, and *Edward S. Plank* was appointed executor. Early in 1907, the Eachors having failed to pay anything on their two mortgages, and having abandoned their farm of 200 acres, *Edward S. Plank,* who was a farmer and had sold his own farm, conceived the idea of purchasing the Eachor farm, a part of it in substitution for the $3,000 mortgage held by the estate and which belonged to him either as executor or residuary legatee charged with the support of the mother. He and M. Plank conferred about the matter and consulted counsel, and the plan was conceived of having that portion of the farm which was taken in consideration of the estate's mortgage conveyed directly into the same title as the mortgage had been held, to the end that it might stand specifically charged with the mother's rights. Accordingly *E. S. Plank* negotiated with Eachor for a conveyance of the entire 200 acres in consideration of the cancellation of the $3,000 mortgage which had been assigned to E. D. Plank and was part of his estate, and $1,800 in money which M. Plank agreed with Eachor to accept in satisfaction of the other mortgage to M. Plank, being that assigned to the bank and here sued on; but, the assignment being unrecorded, that fact was wholly unknown to either *Edward S. Plank* or to Eachor. An abstract was obtained and submitted to the attorney of *Edward S. Plank,* accompanied by a certificate of the register that no assignment of the mortgage sued on appeared of record. Conveyance or releases were obtained from certain other parties extinguishing rights in the land, and in May, 1907, two full warranty deeds were executed by Eachor

and his wife and deposited with M. Plank, one running to
E. D. Plank, his heirs and assigns, of the eighty now in ques-
tion and one of the other forties, the other to *Edward S. Plank*
of the remaining eighty acres, and at about the same time, and
before the delivery of the deeds to *E. S. Plank,* M. Plank exe-
cuted a complete discharge of the mortgage to him, which had
been assigned to the plaintiff.    Thereupon the deeds were de-
livered to *Edward S. Plank,* who delivered his discharge of
the estate mortgage and paid the $1,800 in addition, and
thereafter entered into possession of the entire 200-acre farm.
The deeds and releases were recorded September 3, 1907.
Final order in the E. D. Plank estate, dated January 27,
1908, assigned the residue, including this land by specific de-
scription, to appellant subject to charge for his mother's sup-
port.

None of the defendants other than *Edward S. Plank* made
any appearance or interposed any defense.    The court held
that deed, running to a person already dead, was absolutely
void and of no effect, and left the title in Eachor, and accord-
ingly entered judgment for the full sum of the Eachor mort-
gage in favor of the bank and for sale of the mortgaged prem-
ises and payment of the full proceeds to the extent of such
$3,000 and interest to the bank.    From such judgment the
defendant *Edward S. Plank* appeals.

For the appellant there was a brief by *E. F. Kileen,* at-
torney, and *B. R. Goggins,* of counsel, and oral argument by
*Mr. Goggins.*

For the respondent there was a brief by *Rogers & Rogers,*
attorneys, and *H. E. Andrews,* of counsel, and oral argument
by *J. H. Rogers.*

DODGE, J.    1. Appellant attacks the holding that the deed
to E. D. Plank was ineffective to convey any title or interest
in the mortgaged premises.    It is a rule asserted from early
times that no grant can exist without a grantee.    This is of

course axiomatic.    The title cannot pass from the grantor
unless it passes to some one.    As a corollary, it is declared in
many cases that a deed or grant to a person who does not exist
at the time of the grant is void.    Such statements are unas-
sailable if properly understood.    If the grant, in the inten-
tion of the parties, is attempted to be made to some person
who has no existence, it cannot take effect.    *Neal v. Nelson,*
117 N. C. 393, 23 S. E. 428.    Many technical rules, however,
have yielded to more rational views in modern times.    The
real intention of the parties is to be sought and effectuated by
courts when possible.    If it was the intention both of grantor
and grantee that the grant should be to some person or persons
in existence, that intent may be effectuated by ascertaining
under proper rules of evidence the intention of the parties, al-
though such person be not designated by his legal or usual
name.    It has been said in many cases that a conveyance to a
partnership name could have no validity because a partnership
has no legal existence.    But the overwhelming weight of mod-
ern authority is that courts may ascertain the fact that certain
existent individuals are accustomed to be called by the asso-
ciation name, either corporate or copartnership, and draw the
inference that those persons were intended to be the recipients
of the title, although their true names did not appear in the
firm name at all, and even if the names of other existent per-
sons did so appear.    Again, it is recognized in a multitude of
cases that if the court can find that a certain person was in-
tended as grantee, it matters not what name is given him in
the deed.  . The case of *Staak v. Sigelkow,* 12 Wis. 234, is an
illustration.    The proposition is broadly stated in *Case v.
Fish,* 63 Wis. 475, 479, 22 N. W. 322, and *Conroe v. Case,*
79 Wis. 338, 48 N. W. 480.    When parties deliberately on
one side make a conveyance and on the other side receive the
same and pay a consideration therefor, there is a most irresist-
ible inference that a conveyance is intended.    Such intent of
necessity involves the further conclusion that the parties had

in mind some person or persons to whom the property should pass. When a person well known is named, and that person has gone out of existence without the knowledge of the parties, it may well be that no inference is justifiable that any one else was intended. But when the person formerly bearing the name written in the deed is known to both parties to be dead, the inference is very strong that by the use of that name they mean to designate not the dead man but some existent person or persons. In such case the authorities mainly support the power of courts to inquire into the situation, the general design of the parties, the equities between them, and the like, in order to infer who was intended or who equitably ought to have been. It is analogous to the use of a name never, to the knowledge of either party, borne by any person, *i. e.* a fictitious name, as in *Staak v. Sigelkow, supra; Chapman v. Tyson,* 39 Wash. 523, 81 Pac. 1066; *Clifton Heights L. Co. v. Randell,* 82 Iowa, 89, 47 N. W. 905; *Wilson v. White,* 84 Cal. 239, 24 Pac. 114; *Thomas v. Wyatt,* 31 Mo. 188; *Simmons v. Spratt,* 26 Fla. 449, 460, 8 South. 123.

Applying those considerations to the situation here, it is hardly doubtful, all parties knowing of the death of E. D. Plank and that the residue of his estate, which would include this land if belonging to it, was to pass to *Edward S. Plank* subject to a certain charge in favor of the widow and also subject to the possibilities of other claimants against his then unsettled estate, and that all such interests were represented by *Edward S. Plank* in his capacity as executor, with the desire to protect on record all such rights, that the intention was to use the name of E. D. Plank to designate E. S. Plank in his capacity as executor. This view is supported also by the fact that the land was, in a sense at least, acquired in enforcement of the mortgage belonging to the estate; also that his title as executor would be charged with such trust as might be found necessary to protect all parties interested in said estate, *i. e.* the land would become an asset

in the estate of E. D. Plank and protect the same interests as if owned by E. D. Plank. We are convinced that such intention was very clearly established, and that the instrument was therefore effective to convey at least the full equitable title to the executor. Such title has been by the will of E. D. Plank and the final order of assignment fully transferred to *E. S. Plank* individually.

2. Having reached the conclusion that appellant is the owner of the mortgaged premises, we have next to consider whether his title is subject to, or free from, the lien of plaintiff's mortgage as an original question, since the trial court has declared no decision thereon. True, the court found that M. Plank acted with fraudulent intent in discharging the mortgage, but made no finding of any knowledge of, or participation in, such intent by appellant, and the evidence against such knowledge or participation is quite convincing. The question is, therefore, whether *E. S. Plank,* under the circumstances, was entitled to rely on the registry records showing a discharge by the record owner of the mortgage. That the purchaser of real estate will ordinarily be protected in so doing is fully established—by statute in case the conveyances on which he relies are of record before the conflicting ones (sec. 2241, Stats. 1898), and by deliberate decision of this court, even in absence of such prior record, on grounds of estoppel. *Friend v. Yahr,* 126 Wis. 291, 104 N. W. 997; *Marling v. Nommensen,* 127 Wis. 363, 106 N. W. 844; *Marling v. Jones,* 138 Wis. 82, 119 N. W. 931. To this general rule there is the apparent exception that a debtor whose debt is evidenced by a negotiable note, though secured by a recorded mortgage, has no right to rely on the records in paying such debt to other than the real creditor, his authorized agent, or one in actual possession of the note. *Bartel v. Brown,* 104 Wis. 493, 80 N. W. 801; *Loizeaux v. Fremder,* 123 Wis. 193, 101 N. W. 423; *Bautz v. Adams,* 131 Wis. 152, 111 N. W. 69. It is contended that appellant falls within this excep-

tion. It appears, however, that he bought the land from Eachor by a full warranty deed, so that he did not by the conveyance assume any relation of debtor for this note, nor indeed did he ever acquire title subject to the lien of the mortgage. The evidence and finding is that appellant, through an agent, negotiated with Eachor and agreed on purchase for $4,800 for the entire 200 acres, of which $3,000 was to be paid by cancellation of the mortgage and debt belonging to the estate, Eachor assenting if M. Plank would cancel the mortgage and debt in suit standing in his name of record for the $1,800 balance. This he agreed with Eachor to do. Accordingly Eachor, in May, 1907, executed and placed in M. Plank's hands a full warranty deed to E. D. Plank. Abstracts were obtained and submitted to an attorney employed by appellant, who discovered defects of title to cure which certain conveyances were obtained and placed in M. Plank's hands. The attorney demanded as supplementary to the abstract a certificate that the mortgage in suit had not been assigned of record, which was furnished about June 17th together with a certified copy of the record of that mortgage. Thereupon M. Plank executed his discharge of said mortgage of date June 29th. Completion of the details of perfecting abstract title was protracted into August, when, it being approved by his attorney, the appellant paid over to M. Plank the agreed consideration, viz., the $1,800 in money and release of the estate's mortgage, and received delivery of Eachor's warranty deeds and M. Plank's discharge of the mortgage. We are convinced that appellant's attitude was that of a purchaser of a clear title to the land from Eachor; that he dealt with the land and not as payor of the debt. The only circumstance to cast any different color on the transaction was the manual payment to the supposed owner of the mortgage of the money which was to satisfy it. An exactly similar circumstance, however, was held not significant in *Marling v. Jones, supra,* page 91 (119 N. W. 931). It is quite as con-

sistent with a method of protecting M. Plank in the receipt of that portion of the purchase price which Eachor had agreed he should receive as with the idea that *E. S. Plank* was discharging an obligation owed by himself to M. Plank. As such purchaser of real estate the appellant is entitled to protection of the title which the records assured him was at the disposal of his grantor, both because his conveyances were first recorded and because the respondent is estopped by its omission to exercise ordinary diligence to warn those likely to purchase the mortgaged land in reliance on the registry. As a result, judgment must be directed denying any relief by way of foreclosure against the land or its owner, the appellant.

None of the relief sought against the other defendants is possible in a statutory foreclosure action where the principal cause of action fails. Nor indeed is it useful to the plaintiff. Indeed, the present judgment against such defendants for a deficiency after a sale which can never take place, might be an embarrassment to plaintiff in seeking other remedies upon its debt. The order for deficiency judgment is so dependent on, and merely ancillary to, the foreclosure and sale that it would be absurd left standing alone. *Marling v. Maynard,* 129 Wis. 580, 109 N. W. 537.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.